No. 85-568

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

ROGER DVORAK,

        Plaintiff/Appellant,

   vs.

MATADOR SERVICE, INC. a foreign corporation;
and KOCH INDUSTRIES, INC., a foreign
corporation,

        Defendants/Respondents.

_____

APPEAL FROM:  District Court of the Thirteenth Judicial District,
              in and for the County of Yellowstone,
              The Honorable Diane Barz, Judge presiding.

COUNSEL OF RECORD:

      For Appellant/Plaintiff:

          GOETZ, MADDEN and DUNN, P.C.; James P. Molloy,
          Bozeman, Montana, Argued,
          Jeffrey T. Renz, Billings, Montana,

      For Respondents/Defendants:

          *Crowley Law Firm*
          ~~McNamer, Thompson and Cashmore~~; Charles R. Cashmore,
          Billings, Montana, Argued

_____

                   Submitted:  July 8, 1986

                     Decided:  August 28, 1986

Filed:  **AUG 28 1986**

_____
                Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

The plaintiff-appellant brought this action to recover for injuries which he sustained when he was overcome by hydrogen sulfide gas as he was preparing a vacuum tank for welding repairs. The District Court granted the defendants' second motion for summary judgment. From that order and judgment the plaintiff appeals. We affirm.

In March of 1981, the plaintiff-appellant, Roger Dvorak ("Dvorak"), was employed as a journeyman welder at Beall, Inc. of Billings, Montana. Beall repairs and fabricates truck tanks used for hauling commodities such as gas and oil.

On March 4, 1981, defendant-respondent Matador Services Company, a subsidiary of defendant-respondent Koch Industries, Inc., delivered a vacuum tank truck to Beall for repairs. The truck at one time or other had hauled oil production water, salt water, and bottom sediment, all contaminated with hydrogen sulfide, a highly toxic substance. Beall officials were aware that all trucks from the Williston Basin, including this truck, could be expected to have hauled hydrogen sulfide contaminated matter. The record is also undisputed that Beall officials were generally aware of the serious dangers associated with hydrogen sulfide.

When Beall received the truck from Matador, it followed its standard procedures for readying tanks for repair. It placed the truck on a steam rack where it was steam cleaned. It was then left outside to cool overnight. The following morning, March 5, Beall's foreman, Israel Sanchez, tested the tank with an explosimeter to determine whether any explosive gases were present. After determining that the tank was

safe, Sanchez assigned Dvorak and an assistant to do the necessary welding repairs.

When Dvorak entered the tank to begin his work, he discovered that it still contained a considerable amount of tar-like material and sediment, and was generally still dirty. Fearing that an explosion would occur if he began welding, Dvorak left the tank and complained about its condition to Sanchez. Sanchez entered the tank himself to inspect it. He noticed no unusual smells or any other indications that the tank was unsafe so he "ordered" Dvorak and his assistant to reenter the tank and scoop the sediment from the bottom before welding. Sanchez told Dvorak and his assistant to either reenter the tank or "go down the road."

As Dvorak began shoveling the sludge out of the tank, he collapsed. Dvorak's assistant and several other workers reached into the tank and pulled Dvorak out. It was later learned that Dvorak had been exposed to hydrogen sulfide. Dvorak received serious injuries as a result of his exposure to the hydrogen sulfide.

On March 4, 1983, Dvorak filed suit against Beall, Matador and Koch. Dvorak alleged that Beall was liable under the intentional tort exception to the exclusivity provisions of Montana's Workers' Compensation laws. Beall's motion for summary judgment was granted on January 16, 1984. Dvorak's subsequent appeal from that judgment was dismissed with prejudice as fully settled on the merits.

Dvorak stated two claims for relief against Matador and Koch (hereinafter defendants or "Matador"). The first claim for relief alleged that the defendants were strictly liable for engaging in an abnormally dangerous activity. Dvorak's second claim for relief was based on the several theories of

3

negligence. First, Dvorak contended that the defendants generally negligent conduct was responsible for his injuries (primarily that the defendants were under a duty to warn or advise Beall that special precuations were necessary when dealing with hydrogen sulfide). Second, Dvorak contended that the peculiar risks associated with hydrogen sulfide make it an inherently or intrinsically dangerous activity, thus making the defendants' vicariously liable for Beall's wrongful conduct.

The defendants moved for summary judgment in February of 1984 based on the argument that the sole proximate cause of Dvorak's injuries was Beall's negligence in failing to properly clean the subject tank and in requiring Dvorak to reenter the tank even with actual knowledge of its unclean condition. The District Court found that a material issue of fact existed, relating to whether Beall was aware of the gravity of the danger presented by the presence of hydrogen sulfide in the subject tank. On that basis, the court denied the defendants' first motion for summary judgment.

Following further discovery, the defendants renewed their motion for summary judgment based on information which showed that Beall had actual knowledge of the serious dangers associated with hydrogen sulfide. The District Court thereafter granted the defendants' motion for summary judgment and concluded that Beall's knowledge of hydrogen sulfide's potential dangers rendered its conduct the sole proximate cause of Dvorak's injuries.

It is from the granting of summary judgment in favor of the defendants that Dvorak appeals.

Dvorak now presents the following issues for review by this Court:

4

I. Did the District Court erroneously impose summary judgment on plaintiff's negligence claims?

    A. Did the District Court err in holding as a matter of law that the peculiar risk (inherently dangerous activity) exception to the independent contractor rule does not apply to this case?

        1. Does Montana recognize the peculiar risk exception?

        2. Are employees of an independent contractor protected under the peculiar risk exception?

    B. Did the District Court erroneously impose summary judgment on the plaintiff's general negligence claim when the record reflected disputed issues of fact regarding foreseeability and causation?

II. Did the District Court erroneously impose summary judgment on plaintiff's strict liability claim for an abnormally dangerous activity?

I. <u>Dvorak's negligence claims</u>

Dvorak begins his argument under this issue by noting that at the time he was injured, he was an employee of Beall, Inc. Dvorak further notes that Beall was in turn an independent contractor employed by defendant Matador. The general common law rule, which Montana follows, is that an employer is not liable for the negligence or wrongdoing of an independent contractor. See, Storrusten v. Harrison (1976), 169 Mont. 525, 549 P.2d 464. However, there are some very important exceptions to this general rule. Dvorak argues that Matador falls under two common exceptions to the independent contractor rule: (1) the peculiar risk or inherently dangerous activity doctrine; and (2) the employer's liability for his own negligence. Dvorak asserts

5

the District Court, in imposing summary judgment, held that Montana does not recognize the "inherently dangerous activity" exception and that, in any event, the exception would not apply to the facts of this case. With regard to the employer's own negligence exception, the trial court apparently recognized the exception but held that Matador could not be liable on that basis. Dvorak argues the trial court erred in its conclusions.

First, with regard to the inherently dangerous activity exception, Dvorak argues that Montana has long recognized this doctrine. This doctrine basically provides that where the acts to be performed by an independent contractor are of an inherently dangerous nature, the employer will be held vicariously liable for any resultant injury caused by the negligence or wrongdoing of the independent contractor. To establish that Montana has adopted the peculiar risk or inherently dangerous activity exception, Dvorak directs this Court's attention to the recent cases of Kemp v. Bechtel Construction Co., et al. (Mont. 1986), _____ P.2d _____, 43 St.Rep. 1022 and Cash v. Otis Elevator Co. (Mont. 1984), 684 P.2d 1041, 41 St.Rep. 1077.

It is also important to note, Dvorak argues, that employees of independent contractors are protected under the inherently dangerous activity exception. In other words, the exception extends not only to third persons, but also to employees of an independent contractor. Therefore, an employer (i.e. Matador) who hires an independent contractor (i.e. Beall) to engage in an inherently dangerous activity will be liable for negligent acts which injure the contractors own employees (i.e. Dvorak). See, Kemp, supra,

6

and Stepanek v. Kober Construction (Mont. 1981), 625 P.2d 51, 38 St.Rep. 385.

In light of Montana's clear recognition of the inherently dangerous activity exception, Dvorak argues, the only remaining issue is whether the exception applies to this case. In other words, whether the repairing and fabrication by Beall of tanks which contain hydrogen sulfide contaminated matter is an inherently dangerous activity thereby making Matador vicariously liable for Beall's negligence or wrongdoing. Dvorak argues this issue is a question of fact which can only be determined by a jury. Consequently, Dvorak asserts, this case must be reversed and remanded for trial.

Dvorak argues the second exception to the general rule that an employer is not liable for the tortious acts of an independent contractor is that if the employer is himself negligent in his own dealings with the independent contractor, this can give rise to employer liability. In the instant case, Dvorak primarily argues that Matador's conduct falls under this exception because Matador negligently failed to advise or warn Beall that special precautions were necessary when dealing with hydrogen sulfide. Dvorak contends that Beall was ignorant of the reasonable particular protections necessary against hydrogen sulfide's dangers and that Matador knew of Beall's ignorance. Thus, it was reasonably foreseeable to Matador that a Beall employee (i.e. Dvorak) would be injured. Dvorak bases his theory of negligence on § 413 of the Restatement (Second) of Torts.

In response to Dvorak's contentions under this issue, Matador argues it is not vicariously liable for Beall's wrongful conduct. Matador acknowledges there appears to be several exceptions to the general rule that an employer is

7

not vicariously liable for the tortious acts of his agent if the latter is an independent contractor. The exceptions relied on by Dvorak are: (1) the inherently dangerous activity exception; and (2) the employer's liability for his own negligence exception. Dvorak's objective, Matador notes, is to establish that Beall was an independent contractor employed by Matador thereby making Matador vicariously liable for Beall's tortious conduct under the exceptions noted above. However, Matador argues, this whole line of argument by Dvorak simply begs the question and entirely misses the point. We agree.

We agree with Matador that Beall is simply not its agent in the sense in which the proferred doctrines apply and vicarious liability simply does not attach to the instant case. Working through the exceptions to the independent contractor rule is, therefore, to no avail since the underlying agency relationship upon which vicarious liability rests does not exist.

Matador points out the independent contractor rule provides that a principal (employer) will not be liable for the tortious acts of his agent (employee) if the latter is an independent contractor, with certain limited exceptions. In the instant case, however, Matador argues that Beall is not its agent in the first place. Matador did not engage Beall to undertake activities on behalf of Matador in Matador's relations with third parties or the public generally. Rather, Matador engaged Beall to perform tasks for Matador, not tasks which Matador had undertaken to perform for others and was delegating to Beall. This is simply not an agency case and no principle of vicarious liability can be applied.

8

We agree with Matador that Dvorak simply attempts to stretch to the point of misapplication the cases which do properly apply exceptions to the independent contractor rule. For example, such doctrines (i.e. the inherently dangerous activity exception) are especially prevalent in construction cases because clearly a subcontractor is an agent of the contractor (principal) for purposes of performing work which the contractor had agreed to perform for the owner (third party). See, Kemp, supra (although the inherently dangerous activity exception was ultimately held not to apply to this fact situation). In such an arrangement, there may very well be a situation in which the contractor is vicariously liable for the acts of the subcontractor, even though an independent contractor relationship exists. In the present case, however, the agency relationships which form the framework of the doctrines are absent. Therefore, Matador can not be vicariously liable for Beall's wrongful conduct.

It is also important to note, Matador argues, that it is not liable to Dvorak under any general negligence theory, whether associated with an exception to the independent contractor rule or not, because Beall's conduct was the sole proximate cause of Dvorak's injuries. Matador asserts that since Beall knew of the presence and dangers of hydrogen sulfide in the subject tank, had the responsibility to clean the tank prior to employee entry, failed to adequately do so, and then ordered Dvorak into the tank despite his protests that the tank was unclean and unsafe, Beall, and not Matador, is liable for Dvorak's injuries. Matador notes the District Court came to this same conclusion and granted its motion for summary judgment. We agree.

Matador points out that Dvorak under a general negligence theory, is basically arguing that the defendants are liable for his injuries because Matador failed to exercise reasonable care in advising or warning Beall that special precautions were necessary when dealing with hydrogen sulfide. Even assuming Matador owed such a duty to Beall at all (which is highly questionable), and then breached such a duty, the law and facts clearly establish that Beall's conduct, and not Matador's conduct, was the proximate cause of Dvorak's injuries.

Matador strongly relies on the case of Rost v. C.F.I. Steel Corp. (Mont. 1980), 616 P.2d 383, 37 St.Rep. 1657, to establish that Beall's conduct was the proximate cause of Dvorak's injuries. The Rost case was a products liability action against the manufacturer of an elevator cable for injuries sustained when the frayed and torn cable broke and the elevator fell. The plaintiffs in the Rost case settled their dispute against the store owner and proceeded to trial against the cable manufacturer on the theory that the defendant failed to warn the store owner of the dangerous use of the cable. In affirming a jury verdict in favor of the cable manufacturer, this Court found that the proximate cause of the accident was the negligent conduct of the store owner in failing to properly maintain and inspect the cable and not any failure to warn on the part of the manufacturer. The Court characterized the store owner's conduct, as a matter of law, as the superseding intervening force or "operative conduct" leading to the plaintiff's injuries.

We find the circumstances of the Rost case are analogous to the circumstances of the instant case. Dvorak's injuries occurred because Beall did not clean the tank, as it

10

was expected and required to do, and then forced Dvorak to enter the tank even after the unclean conditions had been brought to the attention of Dvorak's foreman. We find without Beall's grossly negligent conduct the accident would not have occurred and, therefore, Beall's conduct was the "operative conduct" or superseding force which intervened as the proximate cause of Dvorak's injuries. A warning from Matador to Beall as to the risks of hydrogen sulfide (if such a duty existed at all) would have been to no avail, and consequently, a failure to warn could not have been the proximate cause of the accident.

II. Dvorak's strict liability claim

In addition to the negligence claims mentioned above, Dvorak's complaint also included a claim against Matador based upon strict liability for engaging in an abnormally dangerous activity. Dvorak points out this Court in Matkovic v. Shell Oil Co. (Mont. 1985), 707 P.2d 2, 42 St.Rep. 1482, recently addressed the theory of strict liability in cases involving an abnormally dangerous activity. In Matkovic this Court adopted § 519 of the Restatement (Second) of Torts which basically holds that "[o]ne who carries on an abnormally dangerous activity is subject to liability for harm to the person . . . of another resulting from the activity, although he has exercised the utmost care to prevent the harm." Matkovic, 707 P.2d at 3-4. In addition, this Court listed numerous factors adopted from § 520 of the Restatement (Second) of Torts to determine whether a particular activity is abnormally dangerous.

Dvorak now argues, consistent with the law embodied in Matkovic, that the transport and storage of hydrogen sulfide contaminated materials by Matador is an abnormally dangerous

11

activity, thereby making Matador strictly liable for his injuries. Dvorak further asserts this issue of whether the handling and storage of hydrogen sulfide contaminated matter is an abnormally dangerous activity is a question of fact for the jury.

We acknowledge that Dvorak's allegations under this issue create a superficial factual issue as to whether the handling of hydrogen sulfide contaminated materials is an abnormally dangerous activity. However, we find, as did the District Court, that even if a jury could have found that Matador's activities were abnormally dangerous, Matador can not be liable in any event because it was not the proximate cause of Dvorak's injuries.

This Court has previously established that a showing of proximate cause is a necessary element for any plaintiff's recovery in strict liability. Brown v. North American Manufacturing Co. (1978), 176 Mont. 98, 576 P.2d 711. Therefore, in order for Dvorak to establish a prima facie case for strict liability, it must be proven that Matador's conduct was the proximate cause of his injuries. Further, contrary to Dvorak's belief, the showing of proximate cause under strict liability is identical to that required for a prima facie showing of negligence. In other words, a defendant's liability can be cut off by a superseding intervening force.

As we have already explained under issue I, we find that Beall's conduct, and not Matador's conduct, was the proximate cause of Dvorak's injuries. Therefore, Matador can not be stictly liable for Dvorak's injuries.

Finally, we agree with Matador that the ultimate reason strict liability does not apply in this case is that Dvorak's

12

injury did not occur while Matador was conducting any activity at all. Rather, the injury occurred during the conduct of an activity by Beall. Matador was not carrying on an abnormally dangerous activity which resulted in harm to Dvorak. Matador had delivered the tank to Beall and it was Beall, not Matador, who was carrying on the activity involved in Dvorak's injury. In other words, Matador was carrying on no activity, abnormally dangerous or otherwise, which resulted in Dvorak's injuries.

In conclusion, we hold the District Court properly granted summary judgment in favor of Matador. This Court has repeatedly stated "that a plaintiff is subject to summary judgment if he fails in establishing certain material elements in a negligence action" (or any cause of action for that matter). Scott v. Robson (1979), 182 Mont. 528, 535, 597 P.2d 1150, 1154; see also Pickett v. Kyger (1968), 151 Mont. 87, 439 P.2d 57. This general rule applies to the instant case.

With regard to his negligence claims under issue I, Dvorak failed to establish the basic principles of agency law necessary to hold Matador vicariously liable for Beall's wrongful conduct. Further, even under a general negligence theory Matador can not be held liable to Dvorak because Dvorak failed to establish that Matador was the proximate cause of his injuries. (This is even assuming Matador owed a duty to Beall and Dvorak in the first place.)

Finally, with regard to his strict liability claim under issue II, Dvorak failed to establish a prima facie case for this cause of action. As explained in the opinion above, Dvorak failed, once again, to show that there was a proximate causal connection between Matador's conduct and his injuries.

We hold because Dvorak failed to establish the necessary elements of his stated causes of action, summary judgment was appropriately granted in favor of Matador.

The order of the District Court granting summary judgment is affirmed.

Justice

We concur:

Chief Justice

Justices

Mr. Justice Frank B. Morrison, Jr., concurring in part and dissenting in part.

I specially concur in part and dissent in part.

Plaintiff presents three theories: 1. Matador and Koch, as owners who employed the services of an independent contractor, should be liable to persons injured by the negligence of the independent contractor on the basis of nondelegable duty because the activity to be performed was inherently dangerous. 2. Matador and Koch were engaged in conducting an ultra hazardous activity, transporting and storing hydrogen sulfide, and should be liable for injury resulting therefrom on the basis of strict liability. 3. Matador and Koch were negligent in failing to warn the independent contractor, Beall and its employees, of the dangerous propensities of hydrogen sulfide and in delivering the truck to Beall in a highly dangerous condition exposing Beall's employees to unreasonable risk of harm.

I would affirm summary judgment on the first two theories and remand for trial on the third issue involving defendants' direct negligence.

In the recent case of Kemp v. Bechtel Construction Co. (Mont. 1986), 720 P.2d 270, 43 St.Rep. 1022, we recognized that an owner can be liable for the negligence of an independent contractor where the owner employees an independent contractor to engage in an inherently dangerous activity. In Kemp the majority found that trenching was not inherently dangerous under the circumstances of that case.

The rule in Kemp is premised upon the fact that the owner controls the work place in general and cannot delegate safety responsibility to a subcontractor thereby effectively insulating the owner from liability. However, in this case, Matador is not in control of the work place. Matador owns personalty, in the form of a truck, which is taken to an

15

independent contractor for servicing. Matador has no right to enter the work place nor control the way work is performed on the premises. Therefore, it would make no sense to extend the Kemp rationale to the Matador circumstance. I would affirm summary judgment in favor of Matador and Koch on the non-delegable duty theory.

In the recent case of Matkovic v. Shell Oil Co. (Mont. 1985), 707 P.2d 2, 42 St.Rep. 1482, we held that strict liability attached for conducting an ultra hazardous activity. I believe that the Matkovic rule is not applicable here. The activity at issue was being conducted by Beall and not by the defendants. Again, I would affirm summary judgment on this count.

Plaintiff alleges direct negligence on behalf of Matador and Koch in failure to warn of the dangerous propensities of hydrogen sulfide and in delivering for cleaning a truck which presented an unreasonable risk of harm to those working inside the truck's tank. This claim should go forward for factual resolution. Apparently the majority feels there is an issue on negligence but finds the action of Beall, plaintiff's employer, to be a superseding cause. The majority alludes to "proximate cause".

This case involves multiple causes. Therefore, the pertinent inquiry is whether the defendants' conduct was a substantial factor in producing plaintiff's injuries. Legal cause, not proximate cause, is the test. Kyriss v. State of Montana (Mont. 1985), 707 P.2d 5, 42 St.Rep. 1487.

Beall, acting through its supervisory personnel, may well have been negligent in directing plaintiff to enter the subject tank containing hydrogen sulfide. However, if Matador and Koch were negligent in failing to advise of the

16

extreme danger, given the amount of sediment they knew was in the tank, that negligence may have concurred with the negligence of Beall. The question of causation, under proper legal cause instructions, is for a jury.

This case should be reversed and remanded for trial on the direct negligence claim.

_____
Justice

Justice William E. Hunt, Sr., dissenting:

This cause of action should be reversed and remanded for trial in the District Court. Appellant Dvorak has stated a claim for which relief may be granted and questions of fact exist which can only be resolved by trial.

Appellant asserts three legal theories by which respondents Matador and Koch may be held liable for his injuries. All three theories rely on recognized exceptions to the general rule that employers of independent contractors are not liable for injury caused by those independent contractors. Before discussing each theory of liability, it is necessary to examine the relationship between Beall and Matador, the subsidiary of Koch.

I agree with the majority that Beall was not acting as an agent of Matador. An agency relationship "results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other to act. State v. Holdren (1963), 143 Mont. 103, 109, 387 P.2d 446, 449, citing 1 Restatement, Agency, § 1 (emphasis in Holdren). No where in the record is it alleged that Matador employed Beall to act on its behalf or subject to Matador's control. Rather, Matador did not have any right to control the details of Beall's operation. Therefore Beall must be considered an independent contractor. See Sharp v. Hoerner Waldorf Corporation (1978), 178 Mont. 419, 424, 584 P.2d 1298, 1302; State ex rel. Ferguson v. District Court (1974), 164 Mont. 84, 88, 519 P.2d 151, 153.

I now turn to the three theories of liability asserted by the appellant. First appellant argues that Matador and Koch are liable because Beall's work in cleaning trucks,

18

which are often contaminated with hydrogen sulfide, is abnormally dangerous. In Matkovic v. Shell Oil Company (Mont. 1985), 707 P.2d 2, 4, 42 St.Rep. 1482, 1484, we replied to a certified question from the Federal District Court for Montana. We stated that strict liability principles apply in an abnormally dangerous situation. In so holding, we adopted the standard set forth in Restatement (Second) of Torts § 519 (1976). The Restatement also treats the issue of abnormally dangerous activities carried on by an independent contractor. Section 427 A. of the Restatement states:

> One who employs an independent contractor to do work which the employer knows or has reason to know to involve an abnormally dangerous activity, is subject to liability to the same extent as the contractor for physical harm to others caused by the activity.

Comment a to § 427A refers to the reader to §§ 419-524A "to determine the liability of both the employer and the independent contractor." The rationale for this rule of employer liability is stated in § 427A comment b. An employer who meets the criteria of § 427A "cannot be permitted to escape the responsibility for the abnormal danger created by the activity which [the employer] has set in motion, and so cannot delegate the responsibility for harm resulting to others to the contractor." This language harmonizes well with our longstanding rule that an employer may not "set in operation causes dangerous to the person or property of others . . . [and then] divest himself of the primary duty he owes to other members of the community by contracting with others for the performance of work, the necessary and probable result of which is injury to third

19

persons." A. M. Holter Co. v. Western Mtge. & Warranty Co. (1915), 51 Mont. 94, 99, 149 P. 489, 490.

I disagree with the majority's conclusion that "Matador cannot be liable in any event because it has not the proximate cause of Dvorak's injuries." Proximate causation is applicable only in a direct negligence action, not in the area of strict liability.

Appellant states a cause of action for which relief may be granted. On this theory, a jury should determine whether Beall's activities were abnormally dangerous and whether Matador knew or had reason to know about the abnormal danger.

Our opinion in Matkovic sets forth the factors to be considered by the jury in determining whether an activity is abnormally dangerous. Matkovic, 707 P.2d at 4, 42 St.Rep. at 148, citing Restatement (Second) of Torts § 520 (1976). Next, appellant asserts that another exception to the general rule of non-liability of employers of independent contractors applies to the facts of this case. Again, appellant relies on Montana cases which reflect the exception found in §§ 416 and 427, Restatement (Second) of Torts (1976). Montana has long recognized that those who employ independent contractors to undertake "inherently dangerous" activity, or activity involving "peculiar risks" are primarily liable for harm growing out of the inherent dangers. See Kemp v. Bechtel (Mont. 1986), ___ P.2d ___, 43 St.Rep. 1022, 1029-1034 (Morrison, Hunt. JJ dissenting) Ulmen v. Schweiger (1932), 92 Mont. 331, 247, 12 P.2d 856, 857; Shope v. City of Billings (1929), 85 Mont. 302, 278 P. 826; A. M. Holter Co. v. Western Mtge. & Warranty Co. (1915), 51 Mont. 94, 99, 149 P. 489, 490.

This rule imposes liability upon employers for "the failure of the contractor to exercise reasonable care." Restatement (Second) of Torts § 416 at 395. Therefore, the contractor's negligence cannot be held to cut off the employer's liability simply because that negligence is the sole proximate cause of the injury. It is the very negligence of the contractor which makes the employer liable. Again this vicarious liability exists because Montana's policy is not to let those who set in motion dangerous activities escape liability. And again, this theory calls for jury determination of the factual issue of whether shoveling sediment from trucks used in the Williston Basin is inherently dangerous or involves peculiar risks.

Finally appellant also relies upon a direct negligence theory to hold Matador and Koch liable for his injuries. The first two theories would hold Matador and Koch liable despite the absence of any negligence upon their part. In his third argument, appellant contends that Matador was directly negligent in not exercising reasonable care to provide that Beall take precautions necessary to avoid peculiar and unreasonable risks inherent in the work. Again this theory reflects the Restatement (Second) of Torts, this time § 413. That section recognizes that employers of independent contractors do not have the right to control the details of the contractor's work. However, where the employers, by knowledge and experience, realize that the work is inherently dangerous, the employers have a duty of due care in setting that work in motion. The simplest way to exercise that care is to provide for preventative precautions in the contract with the independent contractor. Section 413(a) Restatement (Second) of Torts (1976). The employer who realizes, after

21

forming the contract, that dangers have arisen should act to prevent those dangerous from causing injury. See § 413 comment d. Again, a jury should determine the extent of Matador's experience, knowledge, and awareness of unreasonable danger and evaluate the acts of Matador against that standard of due care. For appellant to prevail on this third theory, a negligence action, the jury must, of course, find Matador's actions, or failure to act, proximately caused appellant's injury.

Finally, I must disagree with the majority position that the Restatement exceptions to the general rule of employer non-liability apply only in the construction context. I simply cite a sampling of cases where these sections have been applied outside the construction area. Sun Pipeline Co. v. Kirkpatrick (Tex.App. 1974), 514 S.W.2d 789 (spraying defoliant along an easement); Jrexler v. Tug Raven (E.D.Va. 1968) 290 F.Supp. 429, 444 (gasoline being discharged into storage tanks from a barge); McDonald v. Oakland (Cal.App. 1967) 255 Cal.App.2d 816, 63 Cal.Rptr. 593 (painting a water tank with volatile paint).

As long as the policy behind the sections 413, 416, 427, 427A is remembered, employers will not be suddenly liable for every negligent act of independent contractors employed by them. These theories apply only where employers set in motion activities which are inherently dangerous and where Montana's long-standing policy is to hold the initiator of dangerous activities liable for any resulting injury.

I would reverse and remand for trial.

_____
Justice

22