No. 88-348

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

---

IRVIN "BUZZ" BUSKIRK,

        Plaintiff and Appellant,

-vs-

ADELINE NELSON, et al.,

        Defendants and Respondents.

---

APPEAL FROM:  District Court of the Twelfth Judicial District,
In and for the County of Hill,
The Honorable Chan Ettien, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Goldstein Law Firm; Mort Goldstein, Havre, Montana

    For Respondent:

        Smith, Walsh, Clarke & Gregoire; Joseph P. Gilligan,
Great Falls, Montana

---

Submitted on Briefs:  March 23, 1989

Decided:    June 6, 1989

Clerk

Filed?
'89 JUN FILED PM 10 36

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Irvin Buskirk appeals from a summary judgment entered on April 27, 1988 in the District Court, Twelfth Judicial District, Hill County, against Buskirk and in favor of defendants Adeline Nelson and Donald Nelson.

Because we determine that genuine issues of material fact existed in the cause on which the District Court purported to make findings of fact, we hold that the entry of summary judgment in this cause was improper, reverse and set aside summary judgment, and remand the cause to the District Court for further proceedings.

On January 13, 1983, Buskirk was helping Donald Nelson install a garage door opener on a garage door owned by Adeline Nelson. Adeline is the mother of Donald Nelson. After the door opener was installed, it is alleged that an object flew loose from the door and struck Buskirk in his left eye. Buskirk received immediate medical attention and subsequently incurred substantial expense in relation to medical treatment of his eye. As far as the record now reveals, he may have lost the sight of that eye.

Adeline Nelson was insured under a home owner's policy issued by Farmer's Insurance Exchange, a unit of Farmer's Insurance Group. Buskirk made a claim under the policy for the injuries he received to his eye.

On February 2, 1983, a claims agent for Farmers, Tim McConville, met with Buskirk at his home in Havre, Montana. The claim was discussed but no settlement was reached. McConville again visited Buskirk on March 15, 1983. It appears that as a result of that meeting, Buskirk signed a release which if valid would have the legal effect of

discharging Donald and Adeline Nelson from all of Buskirk's claims. Buskirk's contentions respecting that release will be set out below.

Eventually Buskirk brought suit against Donald and Adeline Nelson and the other defendants on September 27, 1984. The Nelsons, through their insurer, filed an answer to the complaint on November 20, 1984. In the answer, as a fourth defense, it is alleged that Buskirk had released and discharged the Nelsons.

During the course of litigation, the Nelsons moved for summary judgment. The court granted the summary judgment on April 27, 1988. In doing so the District Court made findings of fact. We find that the District Court made findings where contested and genuine issues of material fact existed in the cause. We set them out below.

The indented portions are the findings made by the District Court:

> 1. When the draft was presented to Buskirk, McConville explained that the amount was being paid as a final settlement as to any claims Buskirk had against the Nelsons.

Buskirk's affidavits show that he contends that McConville represented to him that the $1,500 was an advance payment on his claim against the Nelsons and that more money would be forthcoming.

> 2. McConville explained to Buskirk that he would also be entitled to $500 representing the limits of the medical payments provision of the Nelson policy given the medical expenses he incurred following the accident. McConville explained that the draft for $500 was to be issued out of the Billings claims office and that Buskirk would receive that check in several days.

Buskirk claims that when he received the check for $500, it confirmed the statement made to him by McConville that he

would be receiving payments in the future as he understood the arrangement with McConville. The deposition of McConville taken during discovery, cited by respondents as supporting the District Court's finding, does not show that the $500 was explained to Buskirk as being a payment under the medical payments coverage. There appears to be no evidence on which to base the finding. Also Buskirk claims otherwise.

> 3. At the same meeting, McConville presented Buskirk a document entitled "Release in Full of All Claims and Rights." Buskirk looked at the document and signed his name on the signature line at the bottom. McConville witnessed the signature of Buskirk and also signed the release agreement.

Buskirk contends that at the time the release was presented to him, he was told that it was a paper presented for his signature so that McConville's bosses would know that McConville was in contact with Buskirk. Buskirk claimed that the instrument he signed was 3" x 8½" which is not the size of the release.

Buskirk also claims that because of his injured eye, he could not read at the time the instrument was presented to him, and that he did not read it when he signed his name. He contends he signed the instrument because of the representations by McConville that he would receive partial payments, for which a draft was presented to him in the sum of $1,500 at the same time, and that the release instrument was simply proof for the insurance company that McConville was doing his job.

> 4. On March 16, 1983, Buskirk asked his wife, Clarice Buskirk to read the wording on the backside of the draft for the $1,500 given the small print. The wording on the $1,500 draft expressly provided:

Endorsement of this draft constitutes a release or covenant not to sue of all claims, known or unknown, the undersigned has or may have against the payor, their principals, agents, successors and assigns and insurance carriers.

The release and covenant not to sue shall not destroy and or otherwise affect the rights of persons on whose behalf this payment is made, or persons that may claim to be damaged by reason of the accident other than the undersigned, to pursue any legal remedies they may have against the undersigned or any other persons.

However, if this draft is a payment under Workman's or Worker's Compensation, Medical Payments, Guaranteed Benefits, No Fault or similar coverage, Advance Payments, Minor settlements or Comprehensive or Collision Losses, endorsement of this draft shall constitute a receipt only.

5. Buskirk endorsed the back of the draft for $1,500 and deposited the money in the bank. Buskirk refuses to tend the money back to Farmer's Insurance.

What the District Court omits in this finding, is that when Clarice read the language on the back of the draft to her husband, Buskirk, their testimony is that they became concerned about the language and that they underlined those portions on the reverse of the draft which would indicate that the $1,500 was for a receipt only. Thus the draft itself indicates the following underlining of the last paragraph:

However, if this draft is a payment under Workman's or Worker's Compensation, Medical Payments, Guaranteed Benefits, No Fault or similar coverage,

> Advance Payments, Minor settlements or Comprehensive or Collision Losses, endorsement of this draft shall constitute a receipt only.

It was when the Buskirks underlined the draft that Buskirk endorsed it and deposited the money in the bank. Whether Buskirk "refuses" to tender the money back to Farmer's Insurance may be irrelevant. The insurer claims that in order to get a rescission, the draft amount must be tendered.

> 6. After March 15, 1983, Buskirk made no efforts to contact McConville or any other claims representative of Farmer's Insurance as to the settlement of the claim. Farmer's had no notice of alleged claim until suit was filed.

Contravening this finding are the contentions of Buskirk following the receipt of the second payment of $500. Buskirk inquired of Donald Nelson, and of Nelson's insurance agent, concerning additional payments that Buskirk understood he would receive in the future. His testimony and affidavits show that when he made inquiries of the insurance agent, he was led to believe that the insurance company was "working on his claim" and that he would be receiving more advance payments and an offer of final settlement. He was informed that the company was waiting to learn whether or not he would be able to recover his sight in his injured eye.

In addition to the foregoing findings, the District Court also found as a conclusion of law that Buskirk was guilty of laches in waiting to sue until 18 months had passed because he had not made any further contact with the insurer in that period.

This is a case where the District Court adopted verbatim the proposed findings of fact and conclusions of law that were submitted by the attorney representing the insurer and

- 6 -

the Nelsons. The court clearly fell into error when in adopting such proposals, the court constituted itself as a trier of factual issues, rather than determining as a judge whether under Rule 56, Montana Rules of Civil Procedure, any genuine issues of material fact existed. It is clear that such issues do exist.

The parol evidence rule is codified in Montana, § 28-2-905, MCA. Under that statute, evidence outside the terms of the written agreement is admissible when the validity of the agreement is the fact in dispute, or if it is evidence to explain an intrinsic ambiguity or to establish illegality or fraud. The language on the face of the $1,500 draft, purporting to be a release, but which is also a receipt in certain situations is indeed an ambiguity and Buskirk's testimony is admissible in support of his claim of ambiguity, or to establish illegality or fraud, or to dispute the validity of the release. Brown v. Merrill Lynch Pierce Fenner and Smith, Inc. (1982), 197 Mont. 1, 640 P.2d 453.

This Court has stated that summary judgment was not "intended nor can it be used as a substitute for existing methods in the trial of issues of fact . . ." Hull v. D. Irvin Transport Ltd. (1984) 213 Mont. 75, 690 P.2d 414, 417; Kober and Kyriss v. Stewart and Billings Deaconess Hospital (1966), 148 Mont. 117, 122, 417 P.2d 476, 479. The purpose of a motion for summary judgment is to determine whether any issues of material fact exist, and whether the moving party is entitled to judgment as a matter of law. Rule 56(c), Montana Rules of Civil Procedure; Cereck v. Albertson's, Inc. (1981), 195 Mont. 409, 637 P.2d 509.

Because in this case the District Court determined issues of fact on a motion for summary judgment, reversal of the summary judgment is necessary.

There are other issues raised in this case which require a comment. The admissibility of the release in this case is in issue. On discovery, Farmer's produced what appears to be a photocopy of a carbon copy of the original of the release. The original of the release was not produced by the insurer. Under Rules 1001, 1002, 1003 of the Montana Rules of Evidence, a copy of a writing kept in the regular course of business copied from another writing is admissible to the same extent as an original unless a genuine question is raised as to the authenticity of the original, or if under the circumstances it would be unfair to admit the duplicate or copy in the regular course of business in lieu of the original, or if a specific statute otherwise requires admissibility. We determine that whether the original of an instrument is authentic is a different question from whether an authentic original instrument was entered into by fraud or mistake. Unless, therefore, in this case Buskirk disputes the authenticity of the original, a true copy would be admissible. The original, of course, is the best evidence of the instrument, if it is available.

Reversed and remanded.

_____
John C. Sheehy
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices