No. 91-019

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991


IRVIN "BUZZ" BUSKIRK,

        Plaintiff and Appellant,

-vs-

ADELINE NELSON and
DONALD NELSON, et al.,

        Defendants and Respondents.

FILED

SEP 24 1991

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Twelfth Judicial District,
In and for the County of Hill,
The Honorable Robert S. Keller, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

            Mort Goldstein; Goldstein Law Firm, P.C., Havre,
            Montana

        For Respondents:

            William J. Gregoire, Joseph P. Gilligan; Smith,
            Walsh, Clarke & Gregoire, Great Falls, Montana


Submitted on Briefs: August 1, 1991

Decided: September 24, 1991

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the District Court of the Twelfth Judicial District, State of Montana, County of Hill. This appeal is from a directed verdict in favor of Adeline Nelson and a jury verdict finding no liability on the part of Donald Nelson. From this judgment Irvin "Buzz" Buskirk appeals. We affirm.

In the summer of 1982, Adeline Nelson employed several students of Northern Montana College to construct a garage on her property. She employed a Mr. Wills and another college student to construct her garage from a "garage kit" from the local lumber yard. This kit included all the materials necessary for the construction of a two-car garage, including a sixteen foot wide sectional garage door manufactured by Frantz Manufacturing Company. The garage door operated by means of two large "extension springs" which were located on each side of the garage door and suspended from the ceiling of the garage. These extension springs were used to counter the weight of the garage door for ease of opening and closing. A cable attached to these extension springs ran from the springs to the top of the garage door, over a pulley, and then down to the bottom of the garage door where it was attached to the bottom "roller bracket." Because the garage door weighed approximately 300 pounds, the springs on each side had a lifting power of 150 pounds when the garage door was fully closed. The roller brackets were located at the very bottom of the garage door to which the cables were attached, and were bolted to the garage

2

door with two nuts and bolts for each bracket.

Approximately six months after the garage had been built, in November of 1982, Adeline attempted to open her garage door, when the garage door bound up and the bottom "rail" (board) at the south end of the garage door developed a foot long split or crack in the wood. Adeline contacted a Mr. Hewitt, owner of "Hewitt Remodeling Service" in Havre, Montana, to repair the cracked bottom rail. Mr. Hewitt installed weatherstripping on the bottom of the garage door to prevent snow or water from coming into the garage under the door. He also bolted metal strapping perpendicularly over the crack, on the inside and outside of the door, thus holding the bottom rail together. Thereafter, the garage door continued to function properly up until the time of the accident.

In December of 1982, Adeline's son, Donald Nelson, who lived with his mother at her home, purchased an electric garage door opener for her as a Christmas present. To help him install the electric garage door opener, Donald contacted a friend, Irvin "Buzz" Buskirk, the appellant. The installation took several days in January of 1983. Initially, Donald and the appellant attached and installed the garage door opener itself. Then, after electricity was brought to the garage door opener, the appellant attached the electrical wires to the opener. Thereafter the appellant and Donald tested the opener by opening and closing the garage door.

While they were testing the door, it became jammed, and the bottom rail on the north end of the door cracked or separated.

This crack or separation was directly underneath the bottom "roller plate" to which the extension spring cable was attached. The panels in the bottom of the door began to fall out, but the appellant and Donald were able to get the panels back into the door, and lowered the door to its fully-down position. The appellant then attempted to repair the crack in the door by using some metal strapping left over from the installation of the garage door opener. The appellant intended to repair the crack in a manner similar to the way Mr. Hewitt had repaired the garage door's south end crack. In the process of attempting to make the repairs, Donald went around to the outside of the garage to pry up on the bottom of the door. The appellant was left inside the garage. As the two worked on the problem, unbeknownst to Donald, the appellant, in order to determine how to repair the crack, got down on his hands and knees to look at the crack. The appellant's expert testified that the appellant's head must have been some nineteen inches from the floor of the garage and within four to six inches from the garage door. The appellant was suddenly struck in the face as the spring-loaded mechanism of the door broke loose, resulting in severe injury to appellant's eye.

This case has been in the courts for a considerable period of time, having begun under the 1983 comparative negligence statute that required the apportionment of fault among the liable parties. This is the second time that this case has been before this Court. In 1988, the trial judge then sitting, granted summary judgment in favor of the defendants on the issue of a "release" that was

4

allegedly signed by the appellant releasing the defendants through their carrier from all liability for the sum of $1,500 for appellant's blinded eye. That summary judgment was reversed in Buskirk v. Nelson (1989), 237 Mont. 455, 774 P.2d 398.

The appellant has submitted nine issues for our consideration. The issues are consolidated and set forth as follows:

1. Was there substantial evidence in the record for the jury to find Donald Nelson to be negligence free?

2. Was it error for the court to give a directed verdict in favor of Adeline Nelson where the appellant alleged that Adeline was:

(A) negligent for his injuries;

(B) liable for the alleged negligent acts performed by independent contractors she hired;

(C) liable to the appellant for failing to provide "a safe place to work" for the appellant;

(D) vicariously liable for the appellant's injuries under a theory of joint enterprise, partnership, principal/agent, or landlord/tenant?

3. Did the trial court err in not giving appellant's instructions 22A, 22B, 24A, 25A, 31A and 41 to the jury?

After carefully considering the transcript and the issues set forth above, we conclude that the appeal hinges upon whether there was substantial evidence for the jury to find Donald Nelson negligence free. If so, then the issue of vicarious liability for his mother, Adeline, is without merit, and is moot under the

5

theories of partnership, joint venture, joint enterprise or landlord/tenant. As noted by the respondents, the remaining issue would then be whether Adeline Nelson was entitled to a directed verdict as a matter of law. Since she had nothing to do with the accident herself, the only way she could have been negligent would be if she knew or should have known of some defect on her property which was unreasonably dangerous and failed to warn the appellant of the defect of which he had no independent knowledge.

With this in mind, we note this is an appeal from a finding of a jury and this Court only needs to determine whether there was substantial evidence to support the verdict as to Donald Nelson. This Court in Kitchen Krafters v. Eastside Bank (1990), 242 Mont. 155, 164, 789 P.2d 567, 572, set forth our standard of review that the findings of a jury will not be reversed on appeal unless they are not supported by substantial evidence. Substantial evidence is defined as that evidence that a reasonable mind might accept as adequate to support a conclusion. It can be based upon weak and conflicting evidence, but in order to rise to the level of substantial evidence, it must be greater than trifling or frivolous. See Christensen v. Britton (1989), 240 Mont. 393, 401, 784 P.2d 908, 913. While the appellant argues that Donald Nelson should have been found by the jury to be a non-credible witness, and thus, that the jury had no alternative but to find that he was negligent to some degree, we have held in numerous cases that the issue of credibility is an issue that rests squarely with the jury. In Davis v. Church of Jesus Christ of LDS (1990), 244 Mont. 61, 68,

796 P.2d 181, 185, this Court noted:

> Where conflicting evidence exists the credibility and weight to be given to the evidence is within the jury's province. Wheeler, 757 P.2d at 345. The jury found sufficient evidence that the walkway was unsafe and this Court will not overturn its determination by weighing conflicting evidence on appeal. Wheeler, 757 P.2d at 347.

Here there was more than ample evidence to support the jury's verdict. It is uncontested that immediately prior to the accident, Donald and the appellant were operating the garage door with the new electric door opener that they had just installed. The new crack in the bottom of the north end of the door was fully noted by both the appellant and Donald. They disconnected the garage door opener and brought the door to the fully-down position. Thereafter, the two men began to repair the new crack in the door.

The appellant testified that he did not know what Donald was doing at the time he left the garage and had no reason to be on guard for his own safety. This testimony was brought into question by the appellant's own expert witness, Mr. Udall, who testified that the appellant had told him that he understood that Donald was going to go outside the garage door and pry up on the bottom of the door in order to attempt to close the crack that had developed. Mr. Udall further testified that he was told by the appellant that he, the appellant, then went over and knelt down in front of the spring-loaded bracket to see what was binding up the garage door. This testimony raised a question as to the credibility of appellant's testimony at trial and was, of course, a question for the jury to decide.

7

Neither the appellant nor Donald nor any of the expert witnesses could testify exactly as to how the accident occurred. Thus, it became a question for the experts to try to speculate as to what possibly could have taken place. The jury verdict reflects that no one could state to any degree of probability how the accident took place. We conclude that there is substantial evidence to support the verdict of the jury as to the absence of negligence on the part of Donald Nelson.

The next issue concerns the directed verdict in favor of Adeline Nelson. As previously noted, after both the appellant and the respondents rested their cases, both the Nelsons moved the court for a directed verdict in each of their respective cases. The court granted a directed verdict for Adeline Nelson but denied the motion for directed verdict for Donald Nelson. Both parties rely on several Montana cases as to the duty of a landowner to use ordinary care to maintain her or his premises in a reasonably safe condition or to warn those legally on the land of any hidden or lurking dangers. See Luebeck v. Safeway Stores, Inc. (1968), 152 Mont. 88, 90, 446 P.2d 921, 922-23. This principle was most recently stated in Davis. However, the possessor of land is not an insurer against all accidents and injuries to invitees on the premises. See Cassady v. City of Billings (1959), 135 Mont. 390, 393, 340 P.2d 509, 511.

The transcript indicates that at the time of the motion for a directed verdict on behalf of Adeline Nelson, the district judge specifically asked the appellant's attorney what Adeline Nelson

8

knew or should have known about the garage door that the appellant did not know. Appellant's counsel was unable to respond to the judge's question indicating that Adeline Nelson was not in any way involved with the garage door at the time of the accident and, therefore, a ruling was made in her favor.

The judge gave as his reason for granting a directed verdict, that the appellant not only knew about the new crack in the garage door but also knew that the garage door had been previously repaired on the south end with metal strapping prior to the accident. With this knowledge of the cracks, repairs, and with the knowledge of the overall condition of the garage door, the appellant had proceeded in an attempt to repair the garage door. The appellant's knowledge concerning the condition of the garage door was superior to that of Adeline Nelson. At the time of the ruling in favor of Adeline, there was no evidence presented of a "hidden or lurking danger" on the premises known to Adeline or that Adeline should have anticipated.

Next, the appellant raised the question of alleged negligence of independent contractors imputed to the landowner. It would appear that the appellant is alleging that Adeline is liable for any alleged negligent acts of the contractors who constructed her garage, or Mr. Hewitt, the contractor who repaired the south end of the garage door, regardless of whether she was aware of any dangerous condition they allegedly created. It is the general rule in Montana that an owner is not liable for acts of an independent contractor. Wells v. Stanley J. Thill and Associates, Inc. (1969),

9

153 Mont. 28, 31, 452 P.2d 1015, 1017.

The appellant's own expert, Mr. Udall, testified that his only criticism as to how the garage door was installed was the placement of the bottom bracket on the garage door by the installers and that the inside of the door should have been painted. His testimony indicated that the placement of the bottom bracket on the garage door was not something that an ordinary landowner would have expertise in, and in fact, the appellant's expert was impeached as to where he thought the brackets should be placed on the door in spite of the fact that he had been in the garage door business in excess of thirty years.

All three of the appellant's experts agreed that the cause of the accident was the cracking of the garage door which took place just prior to the time of the accident. As a matter of law, Adeline Nelson, who was not present when the door cracked, could not be held liable for failure to warn about something of which she had no knowledge.

As to the appellant's allegation that he was not provided a safe place to work, this issue was not directly raised at the time of trial. It therefore does not warrant consideration by this Court. The issue of whether Adeline Nelson was vicariously liable for appellant's injuries under a theory of joint enterprise, partnership, principle/agent or landlord/tenant is rendered moot following the jury's conclusion that Donald Nelson was not negligent.

Finally, we are faced with the issue of whether the court

10

erred in not giving appellant's proposed instructions 22A, 22B, 24A, 25A, 31A and 41 to the jury. In the judge's review of the instructions, he told the attorneys that he was going to read the instructions that he intended to give, and that if either party had objection to an instruction that was given or refused, that they should voice that objection when he came to that particular instruction. The only objection made as to any of the instructions was the appellant objecting to the respondents' instruction 25 which set forth the law in the State of Montana as it relates to independent contractors. That instruction accurately reflects the existing law in Montana as set forth in Storrusten v. Harrison (1976), 169 Mont. 525, 549 P.2d 464 and Dvorak v. Matador Services, Inc. (1986), 223 Mont. 98, 727 P.2d 1306. The appellant's objection to the instruction was that it should have set forth the two exceptions to the general rule whereby the employer of an independent contractor can be held liable for the contractor's negligence. He noted that as set forth in Dvorak the two exceptions most commonly raised are: (1) the peculiar risk or inherently dangerous doctrine; and (2) the employer's liability for his own negligence. Dvorak, 727 P.2d at 1309.

As previously noted there is no evidence or law justifying instructions to a jury on the two exceptions in this case. Here we have an attempt to repair a crack in a garage door which cannot be categorized as a peculiar risk or inherently dangerous activity. As noted, Adeline Nelson could not have possibly been negligent since there was no evidence that she knew or should have known of

11

any defect in the door which arose immediately prior to the accident.

In addition, we note as set forth in the respondents' brief that the instructions were offered by both parties and primarily argued the evening before the close of the evidence while Adeline Nelson remained a party defendant. Since she was the only person who employed the carpenters to build the garage and Mr. Hewitt to repair the crack on the south end of the door, the instruction was frivolous after she was dismissed from the case by a directed verdict of the court. It would have had no impact on the jury's decision as to the negligence of Donald. The evidence is clear that the building and prior repairs to the garage was done by persons hired by Adeline without any involvement of Donald.

While the appellant also objected to the court's failure to give instructions 22B, 24A, 25A, 31A and 41, these instructions set forth the duties of the possessors of land and the owner of property. Here again, Adeline was dismissed from the case on a directed verdict. No legal relationship existed between her as landowner and Donald Nelson as a person installing the garage door opener, and the duties as set forth in the proposed instructions were not issues to be decided by the jury in their deliberation.

We conclude the refusal by the court to give these instructions, in view of its directed verdict in favor of Adeline Nelson, is not error. We conclude the court committed no error in refusing the instructions above mentioned; there being no evidence presented to establish the theory proposed by the appellant.

12

Affirmed.

_/s/ John Conway Harrison_____
Justice

We concur:

_/s/ J.A. Turnage_____
Chief Justice

_/s/ Terry Trieweiler_____

_/s/ William E. Hunt_____

_/s/ _____
Justices

September 24, 1991

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Mort Goldstein
Goldstein Law Firm, P.C.
438 3rd Street
P.O. Box 706
Havre, MT 59501

William J. Gregoire, Esq.
SMITH, WALSH, CLARKE & GREGOIRE
121 Fourth Street North, Suite 2A
P.O. Box 2227
Great Falls, MT 59403-2227

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:
Deputy