No. 91-002

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

CASSANDRA LEE SILVIS, a minor, through her parents and next friends, Susan Silvis and David Silvis, and SUSAN SILVIS and DAVID SILVIS,

Plaintiffs and Appellants,

-vs-

JOHN M. HOBBS, JR., M.D., and SAINT VINCENT HOSPITAL AND HEALTH CENTER, INC., a Montana corporation,

Defendants and Respondents.

APPEAL FROM: District Court of the Thirteenth Judicial District, In and for the County of Yellowstone, The Honorable Robert W. Holmstrom, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

William A. Trine, Williams and Trine, Boulder, Colorado; A. Clifford Edwards, Edwards and Paoli, Billings, Montana.

For Respondents:

Robert C. Brown and Brendon J. Rohan, Poore, Roth & Robinson, Butte, Montana; Richard F. Cebull and John J. Russell, Brown, Gerbase, Cebull, Fulton, Harman, & Ross, Billings, Montana.

FILED

JAN 23 1992

Filed:

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: December 12, 1991

Decided: January 23, 1992



Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Appellants Cassandra Silvis and her mother, Susan (Silvis) Griep, appeal the judgment entered by the Thirteenth Judicial District Court, Yellowstone County, Montana, based upon a jury verdict for the respondents, Dr. John M. Hobbs, Jr. and Saint Vincent Hospital. We affirm.

The sole issue presented for review is whether substantial evidence existed to support the jury verdict in favor of the respondents.

FACTS

On May 16, 1984, at approximately twenty-nine weeks gestation, Susan began experiencing complications in her pregnancy. She was admitted to Saint Vincent Hospital as a patient at risk because she complained of painless vaginal bleeding. The admitting nurse gathered sufficient information regarding Susan's condition and called Dr. Hobbs, Susan's treating obstetrician. Dr. Hobbs instructed the nurse regarding Susan's care. The treatment plan focused on determining the cause of Susan's bleeding.

The optimal place for a twenty-nine week old fetus is in the mother's uterus. Therefore, the plan initiated by Dr. Hobbs and the nursing staff included "expectant management." Nothing actively was being performed to deliver the baby hoping to keep it in the uterus as long as possible. Consistent with expectant management, the nursing plan included monitoring Susan's vital signs and checking for abdominal pain and uterine contractions. An external fetal heart monitor was placed on Susan to monitor the

2

fetal heart rate and record the activity in the uterus, including uterine contractions. A nurse removed the monitor after a few hours of operation.

Dr. Hobbs examined Susan the morning of May 16, 1984. Susan was not in labor. The nursing staff continued monitoring Susan and the fetus. Susan's vital signs remained normal for a woman in her seventh month of pregnancy. Her vaginal bleeding also began to subside and she did not experience pain or uterine contractions. Further, the fetal heart rate was within normal range.

Early in the morning on May 17, 1984, the nurse assigned to care for Susan determined that the fetal heart rate had risen, but was still within the normal range. Mid-morning, Susan complained of menstrual type pain. Although the nurse could not feel uterine contractions, she immediately placed the external fetal heart monitor on Susan to chart uterine activity. Within an hour, Susan began having noticeable contractions. The nurse notified Dr. Hobbs who instructed her to wait and watch to determine if this was a self-limiting condition. Meanwhile, the fetal heart monitor showed that the fetus' heart rate had risen and remained above normal for a period of time, a possible cause of concern.

Dr. Hobbs arrived at the hospital between 1:00 p.m. and 2:00 p.m. on May 17th to examine Susan. Her water had broken and her cervix was slightly dilated, indicating the early stages of labor. No signs of vaginal bleeding existed.

Because Susan was beginning premature labor, Dr. Hobbs and Susan determined that she should be transferred to a hospital better prepared to care for a twenty-nine week old baby. Hospital

3

personnel prepared to transfer Susan to a Salt Lake City hospital. At approximately 3:25 p.m., immediately prior to departure, Dr. Hobbs performed another examination on Susan; she was completely dilated, indicating that she progressed into a later stage of labor. Dr. Hobbs canceled the transfer and ordered an emergency cesarean section to deliver the baby.

Susan arrived in the operating room at 3:40 p.m. The anesthesiologist charted that the fetal heart rate was "ok now" and administered the spinal anesthesia at 3:42 p.m. After the anesthesia was administered and before Dr. Hobbs began the surgery, the fetal heart rate dropped well below normal. Dr. Hobbs began the surgery at 3:50 p.m. and Cassandra Silvis was born at 3:54 p.m.

Cassandra weighed 3 pounds 9½ ounces at birth and was depressed; she had a heart rate but she was not breathing. A pediatrician immediately placed her on a respirator. Among other complications, Cassandra suffered from a brain hemorrhage, low blood pressure, jaundice, and acidosis. Further, Cassandra has been diagnosed as having cerebral palsy.

Appellants brought the underlying medical malpractice action against Dr. Hobbs and Saint Vincent Hospital seeking damages for injuries sustained by Cassandra. Appellants contend that the respondents' negligence caused Cassandra's injuries. A trial spanning approximately thirteen days resulted in the jury's finding that Dr. Hobbs and Saint Vincent Hospital did not act negligently in their care of Susan.

When the District Court submitted the case to the jury at the conclusion of the trial, the court submitted a Special Verdict form

4

for the jury's use in its deliberations. The pertinent portions of the Special Verdict form and the jury's answers are as follows:

4. Did the care provided by Dr. Hobbs' [sic] to Susan Griep violate the duty or standard of care he owed to her?

ANSWER:

Yes _____ No __X__

**GO TO QUESTION NO. 5.**

5. Did the care provided to Susan Griep by the nurses of St. Vincent Hospital violate the nursing duty or standard of care it owed to her?

ANSWER:

Yes _____ No __X__

**NOTE TO THE JURORS**: If you have answered both Question Nos. 4 and 5 with "NO," then do not answer any further questions. The foreperson should sign the Special Verdict form on page 5. The bailiff should be notified that the jury has concluded its deliberations and reached a verdict. The bailiff will then notify the judge and return you to the courtroom.

By answering these questions in the negative, the jury concluded that Dr. Hobbs and the nursing staff acted appropriately on May 17th, and were not negligent in their care and treatment of Susan.

After the court entered the jury's verdict in respondents' favor, appellants moved the District Court for a new trial based on insufficiency of the evidence. This motion was deemed denied under Rule 59(d), M.R.Civ.P., when the District Court failed to rule upon the motion within forty-five days of filing. Appellants appeal claiming substantial evidence did not exist to support the jury verdict. We affirm the jury verdict.

## DISCUSSION

This Court's function is not to agree or disagree with the

5

jury's verdict. Griffel v. Faust (1983), 205 Mont. 372, 376, 668 P.2d 247, 249. The function of this Court is to determine whether substantial evidence existed to support the verdict that Dr. Hobbs and Saint Vincent Hospital were negligence free. Buskirk v. Nelson (Mont. 1991), 818 P.2d 375, 378, 48 St.Rep. 864, 865. Once we find substantial evidence in the record to support the verdict, our job is finished. Griffel, 205 Mont. at 376, 668 P.2d at 249. Substantial evidence is defined as that evidence which a reasonable mind might accept as adequate to support a conclusion. Buskirk, 818 P.2d at 378, 48 St.Rep. at 865. Substantial evidence can be based on weak and conflicting evidence, but the evidence must be greater than trifling or frivolous. Buskirk, 818 P.2d at 378, 48 St.Rep. at 865.

When determining whether substantial evidence existed to support the jury verdict, this Court reviews the evidence in a light most favorable to the party which prevailed at trial. If conflicting evidence is presented at trial, the credibility and weight given to the evidence is in the province of the jury, not this Court. Kukuchka v. Ziemet (1985), 219 Mont. 155, 157, 710 P.2d 1361, 1363. This Court cannot reweigh the evidence or disturb the jury's findings unless the findings are inherently impossible or improbable as not to be entitled to belief. Hash v. State (Mont. 1991), 807 P.2d 1363, 1365, 48 St.Rep. 277, 278. This Court will not retry this case because the jury chose to believe the respondents' evidence over that of the appellants. It is within the jury's province to adopt testimony presented on behalf of one side at the exclusion of the other. Kleinsasser v. Superior

6

Derrick Serv., Inc. (1985), 218 Mont. 371, 374-75, 708 P.2d 568, 570; citing Tompkins v. Northwestern Union Trust Co. (1983), 198 Mont. 170, 645 P.2d 402, 408.

Reviewing the evidence in a light most favorable to the prevailing party, we direct our analysis to the evidence submitted by Dr. Hobbs and Saint Vincent Hospital. In the case at bar, the record shows that the jury verdict for the respondents is supported by substantial evidence.

All parties presented expert testimony regarding the standard of care with which doctors and nurses should comply in a situation such as was presented to Dr. Hobbs and Saint Vincent's nursing staff on May 17, 1984. Appellants' expert witnesses testified that both Dr. Hobbs and the nursing staff were negligent because they provided sub-standard care to Susan which resulted in Cassandra's injuries. More importantly, both Dr. Hobbs and Saint Vincent Hospital presented expert witnesses who testified that the care provided by Dr. Hobbs and Saint Vincent's nursing staff was appropriate and within the standard of care.

Dr. Hobbs called Dr. Roger Spencer, an obstetrician, gynecologist, and subspecialist in high risk pregnancy, as an expert witness. Dr. Spencer testified that Dr. Hobbs' care of Susan was excellent and met the standard of practice.

Dr. Donald Rommes, a neonatologist who specializes in the care of critically ill newborn babies, testified as an expert witness. Dr. Rommes testified that Dr. Hobbs' care of Susan was appropriate. Additionally, he testified that he did not see anything in the medical records indicating that the nurses' care was inappropriate.

7

Saint Vincent Hospital called Dr. Zane Brown and Judy Harmon, R.N., as expert witnesses. Dr. Brown testified that the nursing care provided to Susan by Saint Vincent's nurses was appropriate. Nurse Harmon testified that the nursing care met or exceeded the applicable standard of care.

The foregoing evidence established a reasonable basis for the jury to support its conclusion; this evidence was admissible and credible. It supported the jury's verdict and led the jury to conclude that neither Dr. Hobbs nor Saint Vincent Hospital was negligent.

We hold that the jury verdict was supported by substantial evidence. Accordingly, we affirm the judgment of the District Court based on the jury's verdict in favor of the respondents.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

8

January 23, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


A. Clifford Edwards
Edwards & Paoli
P.O. Box 20039
Billings, MT 59104

William A. Trine
Williams & Trine, P.C.
1435 Arapahoe Ave.
Boulder, CO 80302-6390

Robert C. Brown
Brendon J. Rohan
Poore, Roth & Robinson
1341 Harrison Ave.
Butte, MT 59701

Richard F. Cebull and John J. Russell
Anderson, Brown Law Firm
P.O. Drawer 849
Billings, MT 59103


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
　　　Deputy