No. 12121

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

_____

MARGARET LAURIE,

Plaintiff and Appellant,

-vs-

M & L REALTY CORPORATION,

Defendant and Respondent.

_____

Appeal from: District Court of the Thirteenth Judicial District,
Honorable Charles Luedke, Judge presiding.

Counsel of Record:

For Appellant:

William T. Kelly argued, Billings, Montana.
Keefer and Roybal, Billings, Montana.

For Respondent:

Crowley, Kilbourne, Haughey, Hanson & Gallagher,
Billings, Montana.
Stephen H. Foster argued, Billings, Montana.

_____

Submitted: May 16, 1972

Decided: JUN 2 8 1972

Filed: JUN 2 8 1972

*Thomas J. Kearney*
Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal from a judgment of the district court of the thirteenth judicial district, Yellowstone County, entered after the court directed a verdict in favor of defendant at the close of the case.

Plaintiff, Margaret Laurie, brought action to recover damages for injuries sustained in a fall down a stairway. Plaintiff was an employee of Colborn School Supply, Inc. Defendant, M & L Realty Corporation owned the building in which Colborn operated its business. Colborn leased a portion of the building from defendant and occupied all of the main floor of the building, except one corner room which was used by the Bookmobile Service for the Billings Parmly Library. Colborn utilized its space on the main floor primarily for offices, freight receiving and shipping, and a retail store it was developing. The second floor of the building was used by Colborn as a storage place for its merchandise, and as a receiving-shipping department.

A stairway and an elevator located within the space occupied by Colborn provided access between the two floors. The condition of the stairway when Colborn first took possession under its lease was not shown. The only evidence relative to the condition of the stairway was plaintiff's own testimony and the testimony of Joanne Rost, an employee of Colborn, who began working about sixteen months before plaintiff fell on the stairs. Both witnesses testified that the stairs were old and steep, as well as cupped, rounded and worn. A handrail was located on one side of the stairway, but not on the other. The stairway was illuminated by a window at the top and one lightbulb. A heavy metal door at the top of the stairs opened onto the landing.

Plaintiff started working for Colborn about four months prior to the day she fell on the stairs. Her job as a clerk in

- 2 -

the retail store Colborn was establishing on the main floor frequently required her to move merchandise stored on the second floor down to the retail store on the first or main floor. When she had heavy loads of merchandise to move, she loaded it into a cart and used the freight elevator. She handcarried lighter items down the stairs. She had been up and down the stairs hundreds of times during the time she worked for Colborn, and according to her own testimony, knew the condition of the stairway. Occasionally, a customer of Colborn would go up the stairs to the second floor of the building to look at merchandise.

Plaintiff fell down the stairs on November 25, 1966, while carrying merchandise from the second floor to a customer in the retail store. The complaint alleges with particularity that the stairway was dangerous because (1) the door at the top was unsafe, (2) there was no handrail on the left side, (3) the top step was slippery, and (4) the lighting was inadequate. However, plaintiff's entire testimony on direct examination regarding the cause of her fall consisted only of the following question and answer:

"Q. Would you please tell us why you fell.

"A. Well, as I see it, when I had to come to the door with my packages in my left hand, I pushed with my right arm, being right-handed, and a little bit with my right shoulder to help me start the door opening. I stepped over to one side with my parcels in my left hand and waited for the door to start closing. You're in a small, kind of an inconvenient pattern when you do this. You're standing over away from the stair landing as you're waiting for the door to close. And then I came back a couple of steps and got my self ready for my descent. I grabbed the handrail and started off the first step and fell."

Plaintiff's testimony on cross-examination added this:

The door. With respect to the door at the top of the stairs, she testified:

"Q. And you opened the door with your right hand and right shoulder? A. Right.

- 3 -

"Q. And then you stepped onto the landing at the top? A. Yes.

"Q. As I understand it, you allowed the door to close? A. It had closed, yes, when I started down the stairs.

"Q. The door had already closed behind you when you started down the stairs. A. Yes.

"Q. And the door didn't bump you or anything when it closed. A. No."

Lack of railing on left side. Plaintiff's testimony firmly established that the lack of a railing on the left side had nothing to do with her fall. She testified:

"Q. As I understand it, with your right hand you grabbed onto the railing, is that right? A. I reached over for the right-hand railing, yes.

"Q. And you actually got your hand onto the railing, didn't you? A. I had ahold of it.

"Q. And, of course, the left hand had merchandise in it, didn't it? A. Right."

Illumination. Plaintiff admitted that the lighting conditions were not responsible for her accident. She testified with respect to the lighting:

"Q. Now, where were you looking as you started down the stairs? A. Looking down towards my feet.

"Q. And you could see your feet, couldn't you? A. Yes.

"Q. You could also see the stairs? A. Yes.

"Q. It was light enough so you could see both your feet and the stairs. A. I did see them, yes.

"Q. So that the lighting really didn't have much to do with your fall then, did it? A. Not in itself, no, sir."

That plaintiff did not/whether her fall was caused by the
<small>know</small>
condition of the steps or by some other factor is illustrated by this testimony:

"Q. Now, after you fell you went back up the stairs ---you remember your testimony----to see if there was any extraneous object on the stairs that would have caused you to fall. A. Would you say that again? I didn't hear that.

- 4 -

"Q. Later in the day after you fell you went upstairs to see if there was anything, any extraneous object on the stairs. A. Yes, I did.

"Q. And you didn't find anything? A. I never found anything, no."

Although the stairway was described as "slick" or "slippery" in plaintiff's complaint and in her brief, there is no evidence to establish this allegation. Neither plaintiff nor Joanne Rost testified that the stairs were slippery.

The foregoing facts are what are contained in the abbreviated record on appeal.

The trial court granted defendant's motion for a directed verdict on the ground that the evidence failed to establish the existence of a duty owing from M & L Realty Corporation to plaintiff. Defendant also urges that the evidence failed to establish plaintiff's fall was caused by the condition of the stairway, rather than from some other factor.

The issue urged on appeal is whether the district court erred in granting a directed verdict. We add that if the district court was correct in its conclusion, it is immaterial what reasons were assigned therefor. Advance-Rumely Thresher Co. v. Kruger, 93 Mont. 66, 72, 16 P.2d 1102, 1104.

Here, the evidence simply failed to establish that the condition of the stairway caused appellant's fall. Appellant did not blame the fall on the stairway; she testified that "I came back a couple of steps and got myself ready for my descent. I grabbed the handrail and started off the first step and fell." On cross-examination she excluded the possibility that the door at the top of the stairs, the lighting, or the lack of a handrail on the left side caused her to fall. There was no evidence that the steps were slippery. It is fundmental that the evidence must tend not only to show the negligence alleged, but also the causal

connection between it and the injury.  Jackson v. William Dingwall Co., 145 Mont. 127, 134, 399 P.2d 236, 240.

Under the evidence in this record the cause of the fall is a matter of conjecture.  The fact that later in the day she checked the stairway to see if she fell on some extraneous object demonstrates she does not know what caused her fall.

Having reviewed the abbreviated record and the issues presented, we find no error.

The judgment is affirmed.

_Wesley Castles_
Associate Justice

We Concur:

_James T. Harrison_
Chief Justice

_John Conway Harrison_

_Gene B. Daly_

_Frank I. Haswell_
Associate Justices.