No. 79-23

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

JACK E. ROST, VIRGIL HINES
and HELEN OLSON et al.,

Plaintiffs and Appellants,

vs.

C. F. & I. STEEL CORPORATION,
formerly Colorado Fuel and
IRON CORPORATION,

Defendant and Respondent.

---

Appeal from: District Court of the Sixteenth Judicial District,
In and for the County of Rosebud.
Honorable M. James Sorte, Judge presiding.

Counsel of Record:

For Appellants:

Colgrove and Hanson, Miles City, Montana
Terry Hanson argued, Miles City, Montana

For Respondent:

Lucas and Monaghan, Miles City, Montana
Thomas M. Monaghan argued, Miles City, Montana

---

Submitted: April 16, 1980

Decided: SEP 17 1980

Filed: SEP 17 1980

_____
                          Clerk

Mr. Daniel J. Shea delivered the Opinion of the Court.

Plaintiffs appeal from a judgment of the Rosebud County District Court entered on a jury verdict in favor of the defendant in a products liability case tried under the theory of strict liability. The sole issue is whether a jury instruction defining a manufacturer's duty to warn in a strict liability action was an inaccurate statement of the law which requires a new trial. We affirm the judgment.

Although we determine that the jury instruction was inaccurate, we also find that it was not prejudicial because the most explicit warnings would not have prevented the accident. It was well within the province of the jury to determine that the proximate cause of the accident was the failure of the grocery store owner to properly inspect, and see what was plainly there to be seen--a frayed and torn elevator cable which signaled an awaiting accident.

Plaintiffs were injured when the elevator in which they were riding fell ten feet to the basement of a supermarket where they were delivering freight. They settled their case against the store owner for $200,000 and proceeded against defendant C. F. & I. Steel Corporation upon the ground that the defendant who sold the cable, failed to warn the elevator owner of the dangerous use of the cable, and therefore that the cable was rendered defective as a matter of law. The sole issue on appeal concerns a jury instruction stating the defendant's duty to warn--defendant contends that the instruction provided a subjective standard by which the jury was to determine the defendant's duty to warn, and that it should have been an objective standard. The instruction stated that the manufacturer has a duty to warn users of the dangerous character of its products "insofar as it is known to the

-2-

manufacturer if, but only if, the manufacturer has no reason to expect that those for whose use the product is supplied will discover its condition and realize the danger involved."

Because this instruction distorts the duty of a manufacturer to warn in a case sounding in strict liability, the instruction is error. But here the evidence established that the proximate cause of the accident was the failure of the store owner to see upon inspection, what was plainly there to be seen.

The defendant, C. F. & I. Steel Corporation, defends the jury instruction as given, but offers no citation of authority or rationale in its support. This, we feel, is an implicit admission that the instruction is error. But we must, nonetheless, agree with the defendant's argument that the instruction as given was not prejudicial and therefore not a ground upon which to grant a new trial.

A manufacturer may be required to provide a warning in relation to its product if it is to avoid a determination that the product is unreasonably dangerous. See Restatement (Second) of Torts §402A, Comment j at 353 (1965). The product is automatically defective if it is unreasonably dangerous, and a warning is required but not given. Jacobson v. Colorado Fuel & Iron Corporation (9th Cir. 1969), 409 F.2d 1263, 1271. Based on this law, the plaintiffs contend that the cable was defective because no warning concerning dangerous use of this cable was given to the ultimate purchaser and user of the cable. Plaintiffs contend that this duty to warn is measured by an objective standard, the care which would be exercised by a reasonable seller or expected by the ordinary consumer. See Ulrich v. Kasco Abrasives Co. (Ky. 1976), 532 S.W.2d 197; Berkebile v. Brantley Helicopter Corporation (Pa. 1975), 337 A.2d 893; Phillips v. Kimwood

-3-

Machine Company (Or. 1974), 525 P.2d 1033. This standard focuses on the condition of the product and the degree of danger which would be tolerated by the reasonable manufacturer, apprised of the danger, would not sell the product without a warning. Phillips, supra, 525 P.2d at 1036-1037.

The negligence standards, on the other hand, are measured by subjective criteria. An action against a manufacturer on a negligence theory focuses on the degree of care used by the defendant manufacturer. See Restatement (Second) of Torts §388 at 300 (1965); Jackson v. Coast Paint and Lacquer Company (9th Cir. 1974), 499 F.2d 809, 812. This is a subjective standard of care and is measured by the knowledge and reasonable expectations of the purchaser and of the manufacturer.

This strict duty mandated by the theory of strict liability is warranted even though in some situations it may result in liability being imposed upon careful manufacturers. Unforeseeable product defects often cause severe physical injuries to members of the public. The manufacturer can distribute the risk from such accidents among the body of consumers, while the individual consumer must bear the financial burden alone. Placing the risk of loss on the manufacturer provides an incentive to design and produce fail-safe products which exceed reasonable standards of safety. Phillips, supra, 525 P.2d at 1041. Nor can we ignore the fact that a manufacturer with research capabilities can anticipate hazards better than unsophisticated purchasers. Strict liability has its underpinnings in public policy. Midgley v. S. S. Kresge Company (Cal. Ct. App. 1976), 55 Cal.App.3d 67, 74, 127 Cal.Rptr. 217, 221.

Based upon a strict liability standard, the jury instruction stating the duty of one manufacturer to warn, was incorrect. This instruction could have led the jury to believe that the manufacturer was relieved of a duty to warn because the store owner had a prior direct experience with the elevator failing. What may happen at a future time does not relieve a manufacturer of an antecedent duty to warn of the care to be taken or the uses to which the cable can or should not be put. But even if we assume that the jury so reasoned, we cannot ignore the fact that there was ample evidence in the record for the jury to determine that the proximate cause of the accident was the failure of the store owner to properly inspect the cables and to see what was plainly there to be seen.

A products liability action sounding in strict liability does not relieve the plaintiff from proving that the manufacturer's defective product was the proximate cause of the accident. See Brown v. North Am. Mfg. Co. (1978), ___ Mont. ____, 576 P.2d 711, 719, 35 St.Rep. 194, 202. Thus, a manufacturer is not liable where the product owner's failure to properly maintain or inspect the product is the superseding cause of the plaintiff's injuries. Several factors may operate to break the necessary causal chain, such as the owner's knowledge and ability to prevent the danger, the relative safety of the product in the condition which it was sold, or the lapse of time from the date of sale to the accident in question. Though none of these are necessarily determinative in themselves, they may operate to shift the responsibility to prevent an accident from the manufacturer to the owner. See Restatement (Second) of Torts §452(2) Comment f at 490 (1965); Balido v. Improved Machinery, Inc.

-5-

(Cal. Ct. App. 1973), 29 Cal.App.3d 633, 105 Cal.Rptr. 890. As we shall set forth, the facts here amply establish a basis for the jury to determine that the proximate cause of the plaintiffs' injuries was the failure of the store owner to properly inspect the elevator cable.

The store owner maintained and inspected the elevator from 1951 to 1972 when the accident occurred. During this period of time, he had replaced the cable several times. Some years before this accident, he was a passenger on the elevator when the cable failed and the elevator fell. In spite of these experiences, the store owner failed to install safety devices to catch a falling elevator.

Because elevator cables generally have a lifespan of uncertain duration, prevention of accidents resulting from cable fatigue depends in large part upon careful inspection for signs of wear. The serviceable life of cable, moreover, depends upon the wear experienced in the particular apparatus where it is installed. Use of this particular cable did not create an immediate danger to elevator passengers, for the cable was purchased in 1968 and was in use for well over four and a half years before plaintiffs were injured.

Evidence clearly established that the store owner did not carefully inspect the cable. (We note, parenthetically, that plaintiffs' lawsuit against the store owner was settled for $200,000.) The store owner testified that he personally inspected the elevator cable every four to six weeks and that he had visually inspected the entire cable just eight to ten days before the accident. If this was so, he failed to see what was plainly there to be seen. Evidence established that a reasonable inspection two to three months before the elevator fall would have shown the cable to be on the verge of snapping.

-6-

Considering the responsibility of the store owner to maintain and inspect the elevator, and the other factors mentioned here, we have no doubt that the defendant's failure to warn of the dangerous uses of its cables would have fallen on deaf ears. A failure to warn was not the proximate cause of the accident. Rather, the store owner's own negligence intervened as the operative conduct leading to the plaintiffs' injuries. Indeed, the plaintiffs' own expert witness, during cross-examination as to the condition of the cable eight to ten days before the accident, stated that the sight of the cable then would have "scared the hell" out of him. Had he seen what was there to be seen, the store owner should have had the same reaction.

Under the circumstances, the instruction, although inaccurate, was not prejudicial.

The judgment of the District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-7-