No. 85-533

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

CLYDE R. BOEHM, JR.,

        Plaintiff and Appellant,

  -vs-

ALANON CLUB,

        Defendant and Respondent.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Robert Holmstrom, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Nye & Meyer; Jerrold L. Nye, Billings, Montana

    For Respondent:

        Peterson, Schofield & Leckie; V. Joe Leckie, Billings,
Montana

Submitted on Briefs: March 13, 1986

Decided: July 29, 1986

Filed: JUL 29 1986

*Ethel M. Harrison*
_____
Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Clyde Boehm filed a complaint against his former employer, Alanon Club, in the District Court of the Thirteenth Judicial District of the State of Montana, in and for the County of Yellowstone. The court granted defendant's motion for a directed verdict in its favor on Count I of the complaint, and Boehm has appealed. For the reasons stated below, we reverse and remand for a new trial.

Clyde Boehm, appellant, brought suit for damages he received as a result of falling on the property of the respondent, 204 Grand Alanon Club, Inc. (Club). In the second count of the complaint, Boehm claimed damages for wrongful termination from his employment with the Club subsequent to his fall. At the close of plaintiff's case, the Club moved for a directed verdict on both counts. The court granted the motion as to Count I, but denied it as to Count II. Subsequently, the jury found in favor of Boehm on the wrongful termination claim, and neither party has appealed that finding.

Boehm was hired by the Club as a steward in August 1983. His duties included paying the bills, collecting club dues, purchasing and serving snacks and coffee, and cleaning and maintaining the premises. He was paid $100 per week and was allowed to live at the Club.

The accident occurred on the morning of January 3, 1984, while Boehm was still an employee of the Club. It had been raining and snowing that morning from around 8:30 to 11:00. Sometime before 9:00 or 10:00 that morning, Boehm shoveled off the sidewalk leading from the street to the main entrance of the Club and put down a melting agent on the

2

sidewalk to keep the ice melted. Additionally, there was a build-up of ice and snow on both sides of the sidewalk which caused water to run down the sidewalk. Sometime that morning, Boehm returned to the Club after going to the bank and running other errands. As he was walking up the sidewalk, he slipped on some ice and fell, breaking his leg in two places.

Boehm filed a claim under workers' compensation but was denied recovery because the Club did not have workers' compensation insurance, in violation of § 39-71-401, MCA. Boehm then brought an action for damages against the Club which is the subject of this appeal.

Appellant has raised two issues on appeal:

1. In an action for damages against an uninsured employer brought pursuant to § 39-71-508, MCA, must the employee prove negligence or breach of duty by the employer in order to recover?

2. Under the facts established at trial, did the court err in granting respondent's motion for a directed verdict?

I

Appellant brought suit against respondent pursuant to § 39-71-508, MCA (1983). This statute allows an employee to maintain a damage action against his employer for injuries arising out of and in the course of employment. However, only employers who are uninsured, as defined by § 39-71-501, MCA, are subject to such an action. Appellant contends that he should not be required to prove negligence or breach of duty by the employer in order to recover under § 39-71-508. Rather, he seems to assert that because of the theory behind workers' compensation and the policy of construing statutes liberally in favor of the worker, he only needs to show he

was injured on the job in order to recover damages for his injuries. We cannot agree with this proposition.

Section 39-71-508, MCA (1983), provides in pertinent part:

> An employee who suffers an injury arising out of and in the course of employment while working for an uninsured employer as defined in 39-71-501 . . . may elect to either receive benefits from the uninsured employers' fund or pursue a damage action against the employer. . . .

[This statute was amended after appellant was injured.] We hold that the words "damage action," as used in the statute, implies that an employee must prove some fault or breach of duty by the uninsured employer before the employee can recover for his injuries. Normally, the action will be one in negligence; however, negligence is not the only theory of liability encompassed by the statute. Strict or vicarious liability may also apply in appropriate situations.

The only other Montana case to consider this issue held that negligence must be shown in order for an employee to recover for his injuries against an uninsured employer. Chancellor v. Hines Motor Supply Co. (1937), 104 Mont. 603, 69 P.2d 764. Furthermore, case law from other states supports the view that an employee must affirmatively show some fault or breach of duty by the uninsured employer before recovery is allowed.

In Arvas v. Feather's Jewelers (N.M. 1978), 582 P.2d 1302, an employee was injured in the course and scope of his employment with an uninsured employer. New Mexico has a statute which allows an employee to maintain an action for "damages" against an uninsured employer, and the employee brought suit against her employer pursuant to this statute.

4

Although the employee did not contend that she did not have to prove negligence in order to recover, in upholding the judgment for the employee the court assumed that ordinary principles of negligence applied.

The same approach was taken by the Supreme Court of West Virginia in Bates v. Sirk (W.Va. 1976), 230 S.E.2d 738. In language relevant to Boehm's contention, the court stated:

> It is readily admitted by the plaintiff that it is _not enough_ for him to show that he suffered injuries and that the defendant failed to subscribe to the workmen's compensation fund. He acknowledges that before such a case warrants jury consideration he must make a _prima facie showing of negligence_ on the part of the defendant which was the proximate cause of his injuries. [Emphasis added.]

Bates, 230 S.E.2d at 741.

Therefore, case law from other states and a plain reading of the statute supports our holding that in a damage action under § 39-71-508, MCA, an employee must make out a prima facie case of breach of duty by the employer before he can recover for his injuries.

Subsequent to appellant's accident, the legislature amended § 39-71-508 and enacted § 39-71-515, MCA, to close a gap that existed earlier. Unlike the old statute, the amended statute allows an employee to file a claim for benefits from the uninsured employers' fund and pursue a damage action against the uninsured employer at the same time without having to make an election. Furthermore, § 39-71-515 gives an employee an independent cause of action against an uninsured employer by imposing liability simply on the basis of the failure of the employer to be enrolled in a workers' compensation plan on the date of injury. Appellant contends that these amendments apply to his case because they were

5

designed to remedy deficiencies in the prior law and are, therefore, remedial rather than substantive.

The guiding principle in this area is § 1-2-109, MCA, which states: "No law contained in any of the statutes of Montana is retroactive unless expressly so declared." However, it has been held that where a statute is procedural, rather than substantive, § 1-2-109 has no application, and the statute will be applied to a cause of action arising before its enactment. State v. District Court of Fourth Judicial District (1966), 148 Mont. 22, 417 P.2d 109. Therefore, we must determine whether the amendment to § 39-71-508 and the enactment of § 39-71-515 are procedural or remedial, as appellant contends, or whether they are substantive.

The general definition of a substantive or retrospective law has been summarized as follows:

> A retrospective law, in the legal sense, is one which takes away or impairs vested rights acquired under existing laws, or creates a new obligation and imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past.

73 Am.Jur.2d Statutes, § 348 (1974). Similarly, this Court held that "[a] substantive law may be defined as that law which creates duties, rights, obligations, and responsibilities." Dunham v. Southside National Bank of Missoula (1976), 169 Mont. 466, 472, 548 P.2d 1383, 1386.

Appellant contends that the intent of the legislature was to remedy the defects that existed in § 39-71-508 so that an uninsured employer would not be able to completely escape liability. That may be true; however, that does not mean the amendment is remedial. This statute, as amended, in addition to § 39-71-515, imposes a new liability or obligation upon uninsured employers that did not exist prior to their

6

enactment. Furthermore, the statutes grant employees a new cause of action or right that did not exist prior to their enactment. Were we to allow appellant the benefit of these newly-enacted statutes, respondent would be subjected to a completely new and wholly independent liability from the one that existed under the statutes in effect at the time of appellant's injury. This result fits exactly within the definition of a substantive law. Thus, to apply the amended statute to appellant's cause of action would be to give it retroactive effect.

A substantive law may be applied retroactively only when expressly so declared or intended by the legislature. Penrod v. Hoskinson, M.D. (1976), 170 Mont. 277, 552 P.2d 325. Dunham, supra. There is no indication in § 39-71-508 nor in § 39-71-515 that the legislature intended these statutes to apply to injuries arising before their enactment. Had the legislature intended such a result, it could have easily indicated it in the statutes. Therefore, since appellant's injury occurred before the enactment of the statutes in question, his case is governed by the prior law. This holding is consistent with other cases in this area holding that "workers' compensation benefits to an injured worker are determined by the statutes in effect at the time of the injury." Iverson v. Argonaut Insurance Company (Mont. 1982), 645 P.2d 1366, 1367, 39 St.Rep. 1040, 1041; Trusty v. Consolidated Freightways (Mont. 1984), 681 P.2d 1085, 41 St.Rep. 973.

II

Appellant contends next that it was error for the District Court to enter a directed verdict in the

7

respondent's favor. A directed verdict is proper only "[w]here, upon the trial of an issue by a jury, the case presents only questions of law . . ." Section 25-7-302, MCA. Elaborating on this rule, the Court in Sant v. Baril (1977), 173 Mont. 14, 20-21, 566 P.2d 48, 51, set forth the basic test to be applied in determining whether a directed verdict is proper:

> Case authority in Montana has established three basic rules which apply in interpreting section 93-5205 [now § 25-7-302, MCA].
>
> 1. Upon a motion for directed verdict in favor of defendant, the evidence introduced by plaintiff will be considered in the light most favorable to plaintiff and as proving whatever it tends to prove.
>
> 2. A cause should never be withdrawn from the jury unless the conclusion sought to be drawn from the facts must follow as a matter of law and recovery cannot be had upon any view which could be reasonably drawn from the facts which the evidence tends to prove.
>
> 3. In reviewing an order directing a verdict for defendant, the reviewing court will only consider the evidence introduced by the plaintiff and if that evidence, viewed in the light most favorable to the plaintiff, tends to establish the case made by the plaintiff's pleadings the order will be reversed.
>
> . . .
>
> The test commonly employed to determine if the evidence is legally sufficient to withdraw cases and issues from the jury is whether reasonable men could draw different conclusions from the evidence.

We must consider the propriety of the directed verdict with these principles as our guide.

The District Court felt that the cases of Luebeck v. Safeway Stores, Inc. (1968), 152 Mont. 88, 446 P.2d 921, and Uhl v. Abrahams (1972), 160 Mont. 426, 503 P.2d 26, control

the law to be applied in this case. <u>Luebeck</u>, and later <u>Uhl</u>, set forth the general rule which is applied in actions involving injuries caused by falling on ice or snow. In <u>Luebeck</u>, the plaintiff was injured when she fell on defendant's snow-covered lot. The Court held:

> [W]here danger created by the elements such as the forming of ice and the falling of snow are <u>universally</u> known, or as here, <u>actually known</u>, there is no liability. [Emphasis added.]

<u>Luebeck</u>, 446 P.2d at 924.

Similarly, in <u>Uhl</u>, the plaintiff was injured when she fell in defendant's parking lot which was covered with frozen rain. The Court found that the plaintiff "specifically knew from observation immediately prior to getting out of the car that the parking lot and walkway were covered with ice. She recognized the condition as dangerous and knew that she had to be careful or she might fall down." <u>Uhl</u>, 503 P.2d at 28. Although the defendant had used a de-icer on the parking lot that morning to try to melt the ice, the Court held that "[t]here is no evidence that the use of the de-icer on the walkway contributed to the slippery condition. In short, nothing but a natural icing condition due to the elements was involved and such condition prevailed throughout the city." <u>Uhl</u>, 503 P.2d at 28.

Thus, both of these cases involved situations where there was a natural accumulation of snow or ice, and the defendant had done nothing to alter this condition. However, there is a separate line of cases in this area which the court failed to give proper consideration to. Those cases hold that a property owner may be held liable for injuries occurring on his property due to ice or snow where he has altered the natural conditions in some way. Cereck v.

9

Albertson's Inc. (Mont. 1981), 637 P.2d 509, 38 St.Rep. 1986, represents the latest statement from the Court on this point.

In Cereck, the plaintiff was injured when she attempted to cross over a snowbank that had been created on defendant's property. The defendant plowed a passageway in the snow leading from the parking lot to the store entrance which created a snowbank along the passageway. The plaintiff had attempted to cross over the snowbank in order to avoid a large puddle of water that had formed in the passageway. In reversing the lower court's grant of summary judgment in defendant's favor, this Court held:

> A property owner may be held liable for falls on accumulations of ice and snow where the hazard created by the natural accumulation is increased or a new hazard is created by an affirmative act of the property owner; even where such a condition is actually known or obvious, a property owner may be held liable if he should have anticipated that injuries would result from the dangerous condition.
>
> . . .
>
> In this case it may reasonably be inferred that the piling of snow in front of the store entrance increased the hazard created by the natural accumulation of snow and ice and that the defendants should have anticipated the injuries that Mrs. Cereck received as a result of the dangerous condition.

Cereck, 637 P.2d at 511-512. In reaching this result, the Court specifically distinguished Luebeck by finding that the natural accumulation of ice and snow had been altered.

Cereck is firmly supported by Willis v. St. Peter's Hospital (1971), 157 Mont. 417, 486 P.2d 593. There, a patrolman was injured when he slipped on the pavement at the emergency entrance to the hospital. The maintenance crew at the hospital had been keeping the entrance free from snow and

ice by plowing and using a chemical de-icer. In reversing a directed verdict for the defendant, the Court held that "the evidence presented raises a jury question as to whether the slippery snow and ice pack at the emergency entrance was the result of a natural accumulation or the careless use of the deicer chemical used." Willis, 486 P.2d at 595.

We find that Cereck and Willis state the applicable law in the present case. Appellant testified that he shoveled the sidewalk daily and used a de-icer the morning he was injured. The combination of the build-up of snow and ice on both sides of the sidewalk and the possible careless use of the chemical de-icer could have increased the hazard created by the natural accumulation of snow and ice. Furthermore, the possible careless use of the de-icer may have created a hazard or condition completely different from the natural accumulation. Unlike the plaintiffs in Luebeck and Uhl, there was no evidence that appellant knew the sidewalk was slippery or had spots of ice on it, nor was there any evidence that this condition was obvious. In fact, it appears that appellant did not recognize the condition of the sidewalk as being dangerous. The fact that appellant was the only person to testify to these conditions is immaterial because on a motion for a directed verdict, the evidence must be considered "in the light most favorable to plaintiff and as proving whatever it tends to prove." Sant, 566 P.2d at 51.

Therefore, reasonable minds could draw different conclusions on the question of whether the hazard created by the natural accumulation of snow and ice was increased or altered by daily shoveling of the snow and by appellant's possible carelessness in using the de-icer on the sidewalk.

11

Considering the evidence in the light most favorable to appellant, we cannot find that respondent is entitled to judgment as a matter of law. We hold that a jury question was presented on the issue of whether respondent used ordinary care to have the premises reasonably safe for persons coming on its property.

Reversed and remanded for a new trial.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

12