No. 91-143

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

J. ROBERT RILEY,

        Plaintiff and Appellant,

  -vs-

AMERICAN HONDA MOTOR CO., INC.,

        Defendant and Respondent.

APPEAL FROM:    District Court of the Third Judicial District,
In and for the County of Powell,
The Honorable Ted Mizner, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            David M. McLean (argued): Knight, Dahood, McLean &
            Everett, Anaconda, Montana

        For Respondent:

            R. H. Bellingham (argued), Scot Schermerhorn:
            Moulton, Bellingham, Longo & Mather, Billings,
            Montana

FILED

JUN 22 1993

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted:  December 10, 1992

Decided:  June 22, 1993

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Robert Riley appeals from an order of the Third Judicial District Court, Powell County, denying his motion for judgment notwithstanding the verdict or a new trial. We affirm.

We restate the issue on appeal as whether the District Court erred in directing a verdict on the failure to warn claim.

On May **3, 1980,** Robert Riley (Riley) test drove a **1978** Honda GL1000 "Goldwing" motorcycle owned by his friend, Michael Dolce. Riley intended to drive the motorcycle from Missoula to Helena. Approximately eight miles east of Garrison Junction, however, Riley lost control of the motorcycle and drove onto a graveled area off the left shoulder of the highway. The motorcycle flipped as Riley attempted to negotiate it back onto the pavement, throwing Riley down a steep embankment. The accident rendered Riley a quadriplegic.

On April 28, **1983,** Riley filed suit against American Honda Motor Company (Honda), the original distributor of the motorcycle. Riley asserted several negligence claims, as well as design defect, manufacturing defect and failure to warn claims under the theory of strict products liability. Riley abandoned the negligence claims prior to trial.

A jury trial began on September **17, 1990.** Riley contended that the motorcycle had a propensity to wobble, and that a wobble caused him to lose control of the motorcycle. At the conclusion of Riley's case-in-chief, Honda moved for a directed verdict on the design defect, manufacturing defect and failure to warn claims.

2

The District Court directed a verdict on the manufacturing defect and failure to warn claims: only the design defect claim was submitted to the jury. On September 27, the jury returned a verdict in Honda's favor, finding that the motorcycle was not in an unreasonably dangerous defective condition.

Riley subsequently moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. He alleged, among other things, that the directed verdict dismissing the failure to warn claim constituted an irregularity in the proceedings or an abuse of the court's discretion which prevented a fair trial. Riley appeals from the court's denial of his motion; his only asserted error relates to the directed verdict on his failure to warn claim.

Did the District Court err in directing a verdict on the failure to warn claim?

Riley's complaint alleged that Honda had failed to warn of an inherent danger in the use of the motorcycle. In support of his allegation that the motorcycle was inherently dangerous, Riley testified that the motorcycle began to "shimmy and shake" immediately prior to the accident. As a result of the "shimmy and shake," Riley asserted that he had difficulty remaining mounted on the motorcycle and that his right hand was shaken from the handlebar. He further testified that he was unable to prevent the motorcycle from drifting off the highway. Furthermore, Riley's expert witnesses testified that the 1978 Honda Goldwing motorcycle had a propensity to wobble and that the propensity was unreasonably

**3**

dangerous.

At the end of Riley's case-in-chief, Honda moved for a directed verdict on the failure to warn claim. Honda asserted that there was no evidence of record that could support a jury verdict in favor of Riley on that claim. As a separate ground for the motion, Honda contended that the only defect developed by Riley's case was a design defect, and that a claim based on the failure to warn of the design defect was superfluous to the design defect claim. The District Court directed a verdict on the failure to warn claim, stating "the Court feels that this is a design case, and that there is no warning that would make this product safe under the Plaintiff's theory."

Our review of a directed verdict is governed by well-established principles. We consider only the evidence introduced by the party against whom the directed verdict is granted. If that evidence, when viewed in a light most favorable to the party, tends to establish the case made by the party's pleading, we will reverse the directed verdict. Boehm v. Alanon (1986), 222 Mont. 373, 379, 722 P.2d 1160, 1163. The test commonly used to determine if the evidence is legally sufficient to withdraw cases and issues from the jury is whether reasonable persons could draw different conclusions from the evidence. Boehm, 722 P.2d at 1163-64.

We will affirm a district court's grant of a directed verdict if the court's conclusion is correct: the reasons given by the court for granting the directed verdict are immaterial to our review. Laurie v. M. & L. Realty Corp. (1972), 159 Mont. 404, 408,

4

498 P.2d 1192, 1194. Here, we determine that the directed verdict on the failure to warn claim was proper, but for a different reason than that given by the District Court. We focus on whether Riley presented a prima facie case relating to his failure to warn claim. Where a party fails to present evidence establishing all elements of a prima facie case, a directed verdict is properly granted. Nicholson v. United Pac. Ins. Co. (1985), 219 Mont. 32, 37, 710 P.2d 1342, 1345.

Montana law recognizes a failure to warn claim as a distinct cause of action under the theory of strict products liability. In Brown v. North American Mfg. Co. (1978), 176 Mont. 98, 110, 576 P.2d 711, 718, we recognized that "a failure to warn of an injury causing risk associated with the use of a technically pure and fit product can render such product unreasonably dangerous." The elements of a failure to warn claim are the same as any other strict products liability claim:

> (1) The product was in a defective condition, "unreasonably" dangerous to the user or consumer;
>
> (2) The defect caused the accident and injuries complained of: and
>
> (3) The defect is traceable to the defendant.

Brown, 576 P.2d at 716.

"A showing of proximate cause is a necessary predicate to plaintiff's recovery in strict liability." Brown, 576 P.2d at 719. While causation is ordinarily a question of fact for the trier of fact, it may be determined as a matter of law where reasonable minds can reach but one conclusion regarding causation. See

5

Brohman v. State (1988), 230 Mont. 198, 202-03, 749 P.2d 67, 70. Because the causation element is dispositive in the case before us, we do not address whether Riley presented sufficient evidence on the other elements of his failure to warn claim.

Riley presents two separate arguments regarding the causation element of his failure to warn claim. He contends that his testimony relating to his respect for machinery and concern for safety was sufficient evidence from which to infer that he would have ridden the motorcycle differently had a warning of the propensity to wobble been given--creating a question of fact for the jury on the causation element. Alternatively, Riley contends that he is entitled to a rebuttable presumption that he would have followed a warning, thus satisfying the causation element of the failure to warn claim.

It is true that the causation element in a failure to warn claim can be satisfied by evidence indicating that a warning would have altered plaintiff's use of the product or prompted plaintiff to take precautions to avoid the injury. 63 Am.Jur.2d, Products Liability, §§ 356-57 (1984); 9 American Law of Products Liability 3d, § 32:76 (1987). While we have not expressly stated this proposition, we have relied on such evidence in determining whether sufficient evidence supported a finding that a failure to warn was a proximate cause of plaintiff's injuries. In Krueger v. General Motors Corp. (1989), 240 Mont. 266, 783 P.2d 1340, plaintiff was injured while removing the front drive shaft from a General Motors four-wheel drive pickup truck. Parked on a sloping driveway and

engaged in "park," the pickup rolled over plaintiff. The pickup was equipped with a newly designed transfer case which caused the pickup to act differently while engaged in park than a pickup equipped with a conventional transfer case. The jury found that General Motors' failure to warn of the difference was a proximate cause of the injuries.

On appeal, we determined that substantial evidence supported the jury's finding of proximate cause. Krueger, 783 P.2d at 1348. Integral to **our** determination was plaintiff's testimony that he would have altered his method of repairing the truck had he been warned that a pickup equipped with the new transfer case would not behave like a conventional four-wheel drive pickup; other witnesses injured under similar circumstances testified to the same effect. Krueser, 783 P.2d at 1348. We examine the record before us, then, to determine whether Riley presented evidence analogous to that which we relied on in Krueser--evidence establishing that a warning relating to the motorcycle's alleged propensity to wobble would have altered Riley's conduct.

Our review of the record indicates that Riley failed to establish a causal relationship between the lack of a warning and his injury. Unlike the plaintiff in Krueser, Riley did not testify that he would have altered his conduct had he been warned of the motorcycle's alleged propensity to wobble: nor did he present other witnesses to testify to that effect. He does not contend that he presented any direct testimony on causation.

Rather, Riley relies solely on his general testimony that he

respected machinery and was concerned about safety to meet the causation element. Based on this testimony, he suggests that he "might have rode [sic] the motorcycle differently and might not have taken it on a long trip on the highway" had warnings been given. This suggestion is not supported by evidence of record, however. Nor is it analogous to the testimony on which we relied to support a causal relationship between the lack of warning and injury in <u>Krueaer</u>; there, plaintiff unequivocally testified that a warning "would have" altered his conduct.

Considering the evidence presented by Riley in a light most favorable to him, we find no evidence upon which reasonable minds could conclude that a failure to warn of the alleged propensity to wobble was the cause of the accident and injuries. Without such evidence, Riley failed to present a prima facie failure to warn claim.

In the absence of evidence establishing a causal link between the failure to warn and the accident and injuries, Riley urges this Court to apply a rebuttable presumption of causation. Under this approach to failure to warn claims, the causation element is satisfied by a presumption that a warning would be read and heeded. Wooderson v. Ortho Pharmaceutical Corp. (Kan. 1984), 681 P.2d 1038, 1057. A number of jurisdictions rely on Comment j to Restatement (Second) of Torts § 402A (1965) as a basis for such a rebuttable presumption. Comment j provides in pertinent part:

> In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use.

. . .

> Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous.

Some courts interpret this language as creating a rebuttable presumption which works in favor of a seller where an adequate warning is given. Where no warning is given, however, courts have construed this language as giving rise to a rebuttable presumption that the consumer would have read an adequate warning and acted to minimize the risks inherent in the use of the product. See Reyes v. Wyeth Laboratories (5th Cir. 1974), 498 F.2d 1264, 1281; Williams v. Lederle Laboratories, Div. of American Cyanamid Co. (S.D.Oh. 1984), 591 F. Supp. 381, 386-87; and Snawder v. Cohen (W.D.Ky. 1990), 749 F. Supp. 1473, 1479.

Riley asserts that this Court has adopted Comment j in its entirety and, therefore, that the presumption of causation is applicable to his failure to warn claim. We disagree. Our adoption of Restatement (Second) of Torts § 402A (1965) was not a wholesale adoption of the comments accompanying that provision; nor are we constrained by the comments in developing a body of products liability law. Stenberg v. Beatrice Foods Co. (1978), 176 Mont. 123, 128-29, 576 P.2d. 725, 729. It is true that we have cited to Comment j in recognizing the failure to warn claim itself. See Rost v. C.F. & I. Steel Corp. (1980), 189 Mont. 485, 488 and Krueger v. General Motors (1989), 240 Mont. 266, 278, 783 P.2d **1340, 1348.** However, we have not adopted the specific language in

9

Comment **j** that--in the view of many courts--gives rise to a rebuttable presumption regarding causation.

In developing a body of Montana products liability law, this Court consistently has required a plaintiff to establish a causal link between the lack of a warning and the accident and injuries in a failure to warn claim. Brown v. North American Mfg. Co. **(1978)**, **176** Mont. **98, 110, 576** P.2d **711, 719;** Rost v. C. F. & I. Steel Corp. **(1980), 189** Mont. **485, 490, 616** P.2d **383, 386;** Dvorak v. Matador Service, Inc. **(1986),** 223 Mont. **98, 106, 727** P.2d **1306, 1311;** Krueger v. General Motors **(1989),** 240 Mont. **266, 278, 783** P.2d **1340, 1348.** We decline to depart from this approach in the case before us.

It is true that there are policy arguments to be made in support of the rebuttable presumption. These arguments are ably advanced by the dissent, notwithstanding Riley's reliance on his assertion that we previously have adopted the presumption. The dissent's policy arguments, however, do not convince us to abandon the traditional causation element and allow Riley to survive a directed verdict without establishing a prima facie case.

First, the dissent contends that it is "common sense" that if an adequate warning is given the plaintiff would have read and heeded it. While this might be common sense in an ideal world, our own experience does not support it; warnings are everywhere in the modern world and often go unread or, where read, ignored. We conclude that the presumption is not appropriate running in either direction, to the manufacturer/seller where a warning is given or

10

to a plaintiff where it is not.

Next, the dissent raises the perceived difficulties involved in requiring a plaintiff to establish the causation element. We note that the evidence required to establish this element is not qualitatively different than other testimony given by a party in support of her or his prima facie case. Concerns that the testimony may be speculative or self-serving and that a plaintiff may die before the testimony is given are not unique to this cause of action. In any event, these concerns are a red herring in the case before us where Riley had a full and fair opportunity to present his case and simply did not establish a prima facie case of failure to warn.

Finally, the dissent argues that the presumption is consistent with the policy behind strict products liability. This may be so; so too would many other changes in a plaintiff's burden of establishing a prima facie case--including the elimination of any burden at all--be consistent with that policy. We are unwilling to shift the respective parties' burdens in such a fashion. In order to rebut a presumption of causation, the defendant would need to prove that the warning would not have altered the plaintiff's conduct or that the plaintiff's own negligence caused the injury. See 63 Am.Jur.2d, Products Liability, § 358 (1984). A defendant certainly is in no better position to rebut a presumption which totally excuses a plaintiff from meeting the causation element than a plaintiff is in establishing the causation element as part of the prima facie case.

We conclude that the District Court did not err in directing a verdict on the failure to warn claim.

Affirmed.

/s/ Karla M. Gray
Justice

We concur:

/s/ J.A. Turnage
Chief Justice

/s/ John Conway Harrison

/s/ [signature]

_____

_____

_____
Justices

12

I respectfully dissent.

Riley is entitled to a rebuttable presumption that he would have followed the warning if such a warning had been given. Thus he would have satisfied the causation element of his failure to warn claim in the court's consideration of the motion for a directed verdict.

The failure to warn case of product liability is different from the usual products liability case and adherence to the products liability causation criteria is an example of ossification. In a failure to warn case it is not the product itself which is unreasonably dangerous because of a defect in it, but that it is rendered unreasonably dangerous due to the failure to warn and inadequate labeling. Generally it is common sense that if an adequate warning has been presented or given the plaintiff would have read it and taken heed. For the plaintiff to actually testify as to whether or not he would have actually done it, is purely speculative in nature and self serving and in some cases would be impossible due to a death or lack of communication skills on the part of the plaintiff. See 53 A.L.R.3d 239, 247. In Harlow v. Chin (1989), 405 Mass. 697, 545 N.E.2d 602, 606, the court stated "The law permits an inference that a warning, once given, would have been followed." The reason the law imposes a duty to give notice in the first place is the assumption that, because of the danger not commonly known to users, a warning is needed, and if given, will be heeded.

13

Comment j to the Restatement (Second) of Torts, § 402(a), 1965, states that when the warning is given, the seller may reasonably assume that it will be read and heeded, and when the product has such a warning, which is safe for use if it is followed, such product is not in a defective condition nor is it unreasonably dangerous. By the same reasoning it is rational to grant a presumption that if the product should have a warning and if there had been a warning, it would have been read and acted upon to so minimize the risk.

In the first instance the rebuttable presumption benefits the manufacturer and in the second instance the rebuttable presumption benefits the injured. Placing the burden of rebutting this presumption of causation in the second example on the manufacturer is consistent with the policy behind strict liability. It would encourage manufacturers to provide safe products and to warn of the known dangers in the use of the products which might cause injury. It would also discourage any manufacturer from risking liability when he could have provided a warning, even if he felt that such warning would impair the salability of his product. See Nissen Trampoline Co. v. Terre Haute First Natl. Bk., 332 N.E.2d 820. The rebuttable presumption has been overwhelmingly supported in recent cases. See Walsh v. Ford Motor Co. (D.D.C. 1985), 106 F.R.D. 401; Knowlton v. Deseret Medical, Inc (1st Cir. 1991), 930 F.2d 116, 123; Plummer v. Lederle Laboratories (2nd Cir. 1987), 819 F.2d 349; Reyes v. Wyeth Laboratories (5th Cir. 1974), 498 F.2d 1264, 1281; Petty v. United States (8th Cir. 1984), 740 F.2d 1428, 1437;

Brazzell v. United States (N.D. Iowa 1985), 633 F.Supp. 62, 72; Wolfe v. Ford Motor Co. (Mass.App. 1978), 376 N.E.2d 143, 147; and Snawder v. Cohen (W.D.Ky. 1990), 749 F.Supp. 1473.

The case of Kruger v. General Motors Corp. (1989), 240 Mont. 266, 783 P.2d 1340, is not analogous to this case. In <u>Kruser</u> there was no request for the presumption, nor was rebuttable presumption an issue in the case. The rebuttable presumption was not needed, nor raised, nor discussed. In this case it has been specifically raised.

The District Court erred in directing a verdict and I would reverse and remand for a new trial on the cause of action of a failure to warn.

_____
Justice

Justices William E. Hunt, Sr., and Terry N. Trieweiler join in the foregoing dissent.

_____
Justices