NO.  94-147

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

ROBERT C. BARTHULE,

        Plaintiff and Respondent,

    V.

ROBERT KARMAN,

        Defendant and Appellant.

APPEAL FROM:   District Court of the Sixteenth Judicial District,
               In and for the County of Rosebud,
               The Honorable Kenneth R. Wilson, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            John A. Hauf, Hauf & Forsythe,
            Billings, Montana

        For Respondent:

            John Houtz, Attorney at Law,
            Forsythe, Montana

FILED

DEC 20 1994

Filed:  *Ed Smith*
        CLERK OF SUPREME COURT
           STATE OF MONTANA

Submitted on Briefs:  November 17, 1994

        Decided:  December 20, 1994

_____
                    Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Plaintiff Robert C. Barthule filed a complaint in the District Court for the Sixteenth Judicial District in Rosebud County in which Robert Karman was named as the defendant. Barthule alleged that he suffered an injury while working for Karman at a time when Karman was uninsured in violation of Montana's workers' compensation laws. The jury returned a verdict in Barthule's favor and awarded him $35,000 as damages. Karman appeals from the judgment entered pursuant to the jury's verdict. We affirm the judgment of the District Court.

The issues on appeal are restated as follows:

1. Did the District Court err when it denied Karman's motion to change venue from Rosebud County to Yellowstone County?

2. Did the District Court have subject matter jurisdiction of Barthule's independent cause of action against his uninsured employer?

3. Was Barthule's claim barred by the statute of limitations?

4. Was there substantial evidence to support the jury's verdict?

5. Did the District Court abuse its discretion when it refused to give Karman's proposed jury instruction number 11?

6. Did the District Court abuse its discretion when it refused Karman's proposed special verdict form?

## FACTUAL BACKGROUND

In December 1990, Barthule began working as a ranch hand for Karman in Yellowstone County. Trial testimony indicated that it was a common practice for ranch hands to help neighboring farmers gather and brand cattle, hay, and perform other farm operations.

Barthule had, on several occasions, assisted neighbors while employed by Karman. For several days from July 16 to July 20, 1991, Barthule helped roundup cattle on the neighboring King Ranch. Barthule testified that on July 20, 1991, the last day of the roundup, he injured his knee. Barthule testified that he was riding in the back of a pickup while chasing a bull. The pickup struck and rolled over the top of the bull. As a result, Barthule was thrown forward. Afterward, he jumped out and helped remove the bull from under the truck. Barthule stated that he injured his knee either when: he fell in the truck; jumped out of the truck; or was trying to remove the bull from under the truck. Other witnesses recalled the incident differently and some did not recall that Barthule injured his knee at the **time** or in the manner Barthule testified.

After Barthule injured his knee, he quit working for Karman and was paid for the work he had completed. A copy of Barthule's last paycheck indicated that it was paid for work performed during two-thirds of July 1991. Karman admitted that he was not insured against workers' compensation **claims** during that period of time.

3

After initial treatments were less than satisfactory, Barthule eventually underwent a total knee replacement. He filed a claim with the uninsured employers' fund and received benefits of over $8000 before payments were discontinued. On December 18 1992, Barthule filed a complaint in District Court against Karman for failing to maintain workers' compensation coverage.

While considering proposed jury instructions, the District Court decided to give Karman's proposed jury instruction number 10, but rejected his instruction number 11. The court also refused to submit Karman's special verdict form to the jury. After trial, the jury returned a unanimous verdict for Barthule and awarded him $35,000 as damages. Additional facts are added as necessary to decide the issues below.

## ISSUE 1

Did the District Court err when it denied Karman's motion to change venue from Rosebud County to Yellowstone County?

The denial of a motion to change venue is a legal conclusion which we review to determine whether the district court correctly applied the law. *Carter v. Nye* (Mont. 1994), 879 P.2d 729, 730, 51 St.Rep. 781, 782. On January 21, 1993, Karman filed his motion to change venue on the basis that Rosebud County was an improper location. Barthule filed a response and an affidavit which stated that he had lived in Rosebud County for 15 of the last 16 years and was employed in and resided in Rosebud County at the time he filed

4

his complaint. After a hearing, on March 2, 1993, the court denied Karman's motion.

Barthule filed an independent cause of action against Karman for failing to maintain insurance as required by Montana law. Section 39-71-515, MCA. Section 39-71-516, MCA, provides that an independent cause of action under § 39-71-515, MCA, must be brought in the district court in the district where the claimant resides or the alleged violation occurred. Section 25-2-201(1), MCA, provides, in relevant part, that the court must grant a motion to change venue if the county designated in the complaint is not the proper county.

Karman argues that despite what Barthule stated in his affidavit, Barthule resided in Mussellshell County. Karman bases his argument on a Mussellshell County address Barthule listed on a form filed with the Department of Labor and Industry before his complaint was filed in District Court. The alleged injury occurred in Yellowstone County, hence, Barthule argues venue is improper in Rosebud County.

Venue is proper in either the county where Barthule resided at the time his complaint was filed, or where the alleged violation occurred. A defendant may not change venue to a different county when a suit may be commenced in more than one county and the plaintiff files in one of the permissible locations. See *Melroe v. Doyle* (1989), 239 Mont. 524, 525, 781 P.2d 1134, 1135. Based on the affidavit and pleadings, Rosebud County was one of the permissible

5

locations for venue. Therefore, we conclude that the District Court did not err when it denied Karman's motion to change venue.

ISSUE 2

Did the District Court have subject matter jurisdiction of Barthule's independent cause of action against his uninsured employer?

When we review a motion to dismiss based on lack of subject matter jurisdiction, the relevant inquiry is whether the complaint states facts that, if true, would vest the district court with subject matter jurisdiction. *Stanley v. Holms* (Mont. 1994), 883 P.2d 837, 838, 51 St. Rep. 1082, 1082 (citing *United States Natl. Bank of Red Lodge v. Dept. of Revenue* (1977), 175 Mont. 205, 209, 573 P.2d 188, 190). This determination is a question of law, therefore, we must determine whether the District Court's interpretation of the law is correct. *In re Marriage of Barnard* (1994), 264 Mont. 103, 106, 870 P.2d 91, 93.

The District Court denied Karman's motion to dismiss, which was based on his claim that the court lacked jurisdiction. On appeal, Karman argues that the Workers' Compensation Court had exclusive jurisdiction. He relies on cases that interpret statutes other than those involved in the present case, or cases that existed prior to the time the statutes at issue were enacted. He also contends, based on the language *in* § 39-71-508, MCA, that because Barthule initially pursued a claim with the uninsured

6

employers' fund he could not later pursue an action in district court because all remedies must be pursued at the same time.

An employee has several options for bringing claims against an uninsured employer pursuant to § 39-71-508, MCA. That statute provides:

> An employee who suffers an injury arising out of and in the course of employment while working for an uninsured employer as defined in 39-71-501 . . . <u>may pursue all remedies concurrently</u>, including but not limited to:
>     (1) a claim for benefits from the uninsured employers' fund;
>     (2) a damage action against the employer in accordance with 39-71-509;
>     (3) an independent action against an employer as provided in 39-71-515; or
>     (4) any other civil remedy provided by law.

(Emphasis added.) This action was brought pursuant to § 39-71-515, MCA. Karman argues that the "concurrently" language in § 39-71-508, MCA, requires that a claimant file all of the optional claims at the same time, and that a worker may not pursue a claim against the uninsured employers' fund, and if dissatisfied, later pursue any of the other remedies. The plain language of the statute suggests otherwise.

Section 39-71-508, MCA, provides several options and states that an employee may pursue them concurrently, which allows, but does not require, a concurrent pursuit of remedies. Legislative history also supports a conclusion that the remedies were designed to increase an injured employee's options against an uninsured employer without making them mutually exclusive. Minutes, Legislative Hearing on HB 529 before Senate Judiciary Committee,

7

March 18, 1985 at 1-2. We, therefore, conclude that the language of § 39-71-508, MCA, does not require a claimant to file and pursue all claims at exactly the same time, and that receipt of benefits from the uninsured employers' fund does not bar a later district court action.

In a related argument, Karman argues that the District Court did not acquire jurisdiction because Barthule did not file all pleadings with the Department of Labor and Industry as required by § 39-71-517, MCA. That section requires an injured employee to serve all pleadings on the department, whether or not the department is a party to the action. Karman pointed out Barthule's failure to comply with this requirement in a pretrial motion. Barthule subsequently served all pleadings on the Department and the record reflects that the Department acknowledged service. The Department indicated that the State would not be a party to the action.

The purpose of this statute is to ensure that the State is aware of its right to subrogation. That purpose was satisfied, even though the papers were not served at the same time they were filed in the District Court. In addition, § 39-71-517, MCA, does not specify that failure to serve papers will divest a court of jurisdiction. We affirm the District Court's conclusion that it had subject matter jurisdiction.

ISSUE 3

Was Barthule's claim barred by the statute of limitations?

8

The question of which statute of limitations applies to the facts in this case is a question of law which we review to determine whether the district court's interpretation of the law was correct. *Barnard,* 870 P.2d at 93. Karman relies on § 39-71-601, MCA, which states that "all claims must be forever barred unless . . . presented in writing to the employer, the insurer, or the department . within 12 months from the date of the happening of the accident . . ." (Emphasis added.) It appears from the record that Barthule did file a claim with the Department within 12 months from the date of his injury, and therefore, complied with § 39-71-601, MCA. However, Karman argues that Barthule's complaint in District Court also had to be filed within 12 months pursuant to this section, and that since it was not, it is barred as untimely.

Section 39-71-601, MCA, does not prescribe the time period within which claims must be filed in a district court. We have previously recognized that the independent cause of action authorized by § 39-71-508, MCA, is ordinarily considered a negligence action, but strict liability may apply in certain situations. *Boehm v. Alanon Club* (1986), 222 Mont. 373, 376, 722 P.2d 1160, 1162. Therefore, the tort statute of limitations of three years applies and was satisfied. Section 27-2-204, MCA. We conclude that Barthule's claim was not barred by the statute of limitations.

9

## ISSUE 4

Was there substantial evidence to support the jury's verdict?

Our standard of review for a jury's verdict is whether there is substantial credible evidence in the record to support it. *Interstate Prod. Credit Ass'n v. DeSaye* (1991), 250 Mont. 320, 322-23, 820 P.2d 1285, 1287.

In support of his contentions that the verdict was not supported by substantial evidence, Karman cites to testimony which would have supported a finding that Barthule's injury was not work related; and that the consequences of any injury were not permanent. However, it is within the province of the jury to resolve conflicts in testimony and decide the ultimate issues in the case. *See Lackey v. Wilson* (1983), 205 Mont. 476, 478-79, 668 P.2d 1051, 1053.

In *Courser v. Darby School Dist.* (1984), 214 Mont. 13, 692 P.2d 417, we held that the following factors should be considered to determine if an injury is work related:

> Controlling factors repeatedly relied upon *to* determine a work-related injury include: (1) whether the activity was undertaken at the employer's request; (2) whether employer, either directly or indirectly, compelled employee's attendance at the activity; (3) whether the employer controlled or participated in the activity; and (4) whether both employer and employee mutually benefitted from the activity. The presence *or* absence of each factor, may or may not be determinative and the significance of each factor must be considered in the totality of all attendant circumstances.

10

*Courser,* 692 P.2d at 419 (citation omitted). We reiterated this test in *Dale v. Trade Street, Inc.* (1993), 258 Mont. 349, 355, 854 P.2d 828, 831-32.

Considering the totality of circumstances, there was substantial evidence in the record from which the jury could decide that Barthule was an employee for Karman and suffered a compensable work related injury during the scope of his employment. Barthule testified that he injured his knee when he *was* thrown forward in the pickup, when he jumped out of the pickup, or possibly when he struggled with the bull. Art Korenko also testified that Barthule injured his knee while wrestling with the bull and that he thought the bull kicked Barthule. Other witnesses observed his swollen knee after the injury.

Testimony *also* indicated it was a common practice for ranch hands to assist neighboring ranchers in various duties, and indicated that a ranch hand is still considered an employee of his original employer when doing so. In this situation, the ranch hand is paid by his or her employer, not the rancher who received assistance. Barthule had previously assisted other ranchers but was paid by Karman. Karman paid Barthule for work for two-thirds of July, which indicates Karman considered Barthule an employee during the time Barthule injured his knee.

Although Karman did not force Barthule to attend the roundup, Karman was present and did not object to Barthule's presence, or ask Barthule to leave the King Ranch roundup. Finally, testimony

*11*

indicated that ranchers benefit from helping each other out, and Barthule benefited because he was paid for his activity. This evidence was sufficient to satisfy the totality of the circumstances requirement.

In order to prove the elements of a claim brought pursuant to § 39-71-515(2), MCA, Barthule had to prove the following:

> (2) In such an action, prima facie liability of the uninsured employer exists if the claimant proves, by a preponderance of the evidence, that:
> (a) the employer was required by law to be enrolled under compensation plan No. 1, 2, or 3 with respect to the claimant; and
> (b) the employer was not so enrolled on the date of the injury or death.

Karman hired Barthule to work as his employee and was required to enroll in one of the plans for workers' compensation insurance. The evidence from the record set forth above established that Barthule was Karman's employee and was injured within the scope of his employment. Karman admitted that he was not insured on the date of that injury. We conclude, therefore, that there was substantial evidence to support the jury's verdict on the issue of liability.

Karman also argues that if Barthule received an injury, that injury was not a permanent injury, and therefore, not compensable. However, there was evidence that as a result of his injury Barthule was precluded from running, jumping, riding horses, or doing ranch work. At the end of his healing period, his physician concluded that he sustained permanent physical impairment. We conclude that

12

there was substantial evidence to support the finding and conclusion that Barthule's injury *was* permanent and compensable.

ISSUE 5

Did the District Court abuse its discretion when it refused to give Karman's proposed jury instruction number 11?

Our standard of review for discretionary trial court rulings is whether the district court abused its discretion. *Hislop v. Cady* (1993), 261 Mont. 243, 247, 862 P.2d 388, 390. It is not reversible error for a district court to refuse an offered instruction unless the refusal affects the substantial rights of the party who proposed the instruction. *Cottrell v. Burlington Northern R.R.* (1993), 261 Mont. 296, 306, 863 P.2d 381, 387.

The District Court refused Xarman's proposed instruction number 11. That instruction was based on language from *Courser,* as set forth above, but did not include the totality of circumstances language. The court questioned the parties about their preference between Xarman's proposed jury instructions number 10 or number 11. The court believed that number 10 was a more accurate statement of the law, and gave number 10 instead of number 11. We agree.

Instruction number 10 set forth the elements Barthule had to prove by *a* preponderance of evidence, including: (1) that he was an employee working for Karman; (2) that he was injured and suffered a disability as a result; (3) that the alleged injury arose out of and was within the scope of his employment; and (4) that the injury caused a temporary or permanent disability for which he was

13

entitled to recover compensation. Karman's proposed instruction number 11 was patterned after language in Courser, but omitted the totality of circumstances language from that opinion, and therefore, was an incomplete statement of the law. Because instruction number 10 was given and adequately summarizes Barthule's statutory burden of proof, and because number 11 was *not* complete, we hold that the District Court did not abuse its discretion when it refused Karman's proposed instruction number 11.

## ISSUE 6

Did the District Court abuse its discretion when it refused Karman's proposed special verdict form?

Our standard of review of a discretionary trial court ruling is whether the district court abused its discretion. *Montana Rail Link v. Byard* (1993), 260 Mont. 331, 337, 860 P.2d 121, 125. Karman offered a special verdict form that Barthule objected to on the basis that it was confusing. The District Court stated that it believed the form was argumentative and too confusing. Instead, the court used a more simple general verdict form.

The use of a special verdict form is discretionary with the court. Rule 49(a), M.R.Civ.P.; *Kinjerski v. Lamey* (1981), 194 Mont. 38, 41, 635 P.2d 566, 567. The general verdict form, in combination with the court's instructions, adequately presented all of the relevant issues to the jury without the danger of confusion that could have been caused by Karman's proposed verdict form.

14

Therefore, we conclude the District Court did not abuse its discretion by its choice of verdict forms.

We affirm the          of the District Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

15